408 P.2d 34

John D. NICHOLS and Nancy Nichols, husband and wife, individually, jointly and as a community, John D. Nichols Store Management Service, Inc., a corporation, Appellants,

v.

Charles J. ELKINS, d/b/a Miracle Mile Drug Center, Appellee.*

No. 2 CA–CIV 44.

Court of Appeals of Arizona.

Nov. 29, 1965.

Rehearing Denied Jan. 4, 1966.

* This appeal was filed with the Arizona Supreme Court and assigned that Court's No. 7791. The matter was referred to this Court pursuant to § 12–120.23 A.R.S.

274

Fickett & Dunipace, by Fred W. Fickett and William S. Dunipace, Tucson, for appellants.

Price & Tinney by John Price, Tucson, for appellee.

HATHAWAY, Judge.

Charles J. Elkins filed suit in Superior Court, Pima County, on June 1, 1960, alleging that he owned a one-third interest in the Miracle Mile Drug Center and seeking judicial dissolution of the alleged partnership and an accounting. John D. Nichols and Nancy Nichols, husband and wife, and John D. Nichols Store Management Service, Inc., were named as defendants. The sole question submitted to the advisory jury was whether a partnership existed between plaintiff and defendants; the jury's verdict was in plaintiff's favor. Judgment was subsequently entered which awarded to the plaintiff a sum equal to the value of his one-third partnership interest as of May 14, 1960, date of dissolution of the partnership, plus interest at 6 per cent on said sum until paid. Defendants have appealed from this judgment and plaintiff has appealed from the portion of the judgment which allows interest and from the orders denying plaintiff's postjudgment motions. We shall consider each appeal individually.

## DEFENDANTS' APPEAL

Basically the defendants contend that the court erred (a) in finding that a partnership existed (b) in failing to apply the doctrines of laches and estoppel and the statute of limitations as a bar to plaintiff's recovery (c) in allowing the value of good will to be included as a partnership asset and (d) in allowing plaintiff's attorney to represent him over defendants' objection and motion for disqualification.

The advisory jury heard a wealth of testimony concerning the action and conduct of the parties prior to the inception of the business and during the existence of the business relationship. The whole case hinged upon whether the testimony showed a partnership contract or an employment contract. The defendants' position in the court below, and the Nichols so testified, was that the plaintiff was a mere employee of the defendants, his remuneration for services being a monthly

salary of $400 plus a bonus of one-third of the net profits. Contrariwise, the plaintiff testified that there was an oral partnership agreement and that he owned a one-third interest in the business. Where the rights of third parties are not involved, the intention of the parties is decisive in determining the existence of a partnership. Tripp v. Chubb, 69 Ariz. 31, 34, 208 P.2d 312 (1949). The jury decided the factual dispute in plaintiff's favor and there was competent evidence to support its verdict.

■ Since the jury's verdict was advisory, the trial court's finding that a partnership existed determined the judgment, and the assumption of correctness applies to the judgment. Merryweather v. Pendleton, 90 Ariz. 219, 223, 367 P.2d 251 (1962). Viewing the evidence in the light most favorable to the plaintiff and to sustaining the judgment, we will not disturb the trial court's determination that plaintiff was a partner. Deuel v. McCollum, 1 Ariz.App. 188, 400 P.2d 859, 862 (1965); Hurst v. Hurst, 1 Ariz.App. 227, 401 P.2d 232, 235 (1965).

■ Defendants contend that notwithstanding a partnership relationship, plaintiff was barred from recovering because the statute of limitations had run, plaintiff was guilty of laches and further was estopped to assert a claim.

A.R.S. § 12–544 provides:

"There shall be commenced and prosecuted within four years after the cause of action accrues, and not afterward, the following actions:

* * * * * *

"2. By one partner against his copartner for a settlement of the partnership account, * * *."

Plaintiff was expelled from the drug business on May 14, 1960 and filed suit on June 1, 1960. Defendants, however, argue that plaintiff had notice in 1955 of their denial of the partnership relation [1] and his

failure to file an action until more than four years later is a bar. It has been held in this jurisdiction that the time when the right of action to sue for the settlement of partnership affairs accrues, so as to set the statute of limitations in motion, depends upon the circumstances of each case. See Brand v. Elledge, 89 Ariz. 200, 206, 360 P.2d 213 (1961); Younis v. Griego, 72 Ariz. 369, 373, 236 P.2d 358 (1951).

The record discloses that plaintiff was expelled from the business on May 14, 1960. Prior to this date he received substantially the share of net profits to which he would be entitled as a partner—there had been no affirmative denial of his rights until this date. There being no evidence of an agreement to the contrary, the plaintiff's right to an account of his interest in the partnership as against the defendants did not accrue until the partnership was dissolved on May 14, 1960. A.R.S. § 29–243; Rowley, Partnership, 2d Ed., Vol. 2 § 45.1. We hold, therefore, that the limitations statute did not start running until the date of dissolution when plaintiff was excluded from the business. The trial court properly ruled that the limitations defense was without merit.

■ For the same reasons we agree with the trial court that the doctrine of laches is equally inapplicable. As stated by the Supreme Court in Younis v. Griego, supra:

"* * * Whether or not plaintiff is chargeable with laches is a matter to be determined according to the circumstances of the particular case, * * *."

The defense of laches is largely within the sound discretion of the trial court. Brandt v. Brandt, 76 Ariz. 154, 160, 261 P.2d 978 (1953). We find no abuse of judicial discretion in refusing to apply the doctrine after due consideration of the circumstances. Defendants attempted to charge the plaintiff with making a "stale demand"

---

[1]. This alleged notice consisted of a memorandum of the terms of plaintiff's employment purportedly delivered to plaintiff and a copy of the accounting statement for the previous period which did not set the operation up as a partnership.

when in fact the record discloses that any delay on the part of the plaintiff was engendered by defendants' repeated assurances.

 Defendants challenge the correctness of the trial court's ruling that there was no estoppel. The elements of estoppel are (a) acts inconsistent with the claim afterwards relied on, (b) action by the adverse party on the faith of such conduct and (c) injury to the adverse party resulting from repudiation of such conduct. Holmes v. Graves, 83 Ariz. 174, 177, 318 P.2d 354 (1957). Defendants had the burden of showing by clear and satisfactory proof that all of the above-enumerated elements were present. Knight v. Rice, 83 Ariz. 379, 382, 321 P.2d 1037 (1958). They claim that plaintiff was estopped to assert a partnership because he accepted benefits as an employee which operated to defendants' detriment. We agree with the trial court that this claim is without merit. The alleged benefits would be the same whether plaintiff was either (1) defendants' employee or (2) an employee of a partnership business in which he was a partner. There has been no showing of conduct on the part of the plaintiff repudiation of which operated to defendants' injury. Absent such proof, the doctrine is inapplicable.

· After the jury returned a special verdict for the plaintiff, the trial court found the plaintiff owned a one-third interest in the drug store and ordered appointment of a master to render an accounting to the court. Ascertainment of the value of plaintiff's interest on May 14, 1960 was referred to the master. The court further ordered:

"In rendering said accounting, the master shall state further the assets of the partnership, *including good will and the value thereof*, and shall further determine the nature and amount of the partnership liabilities and obligations." (Emphasis ours.)

The master's report included good will as a partnership asset at a value of $35,000. After a hearing on objections to the report,

it was approved in the judgment from which this appeal is taken. Defendants assign error to the inclusion of good will.

Generally, in the absence of an agreement to the contrary, good will is a partnership asset which should be accounted for on the termination of the partnership. 68 C.J.S. Partnership § 385c. Our Supreme Court, recognizing that good will of a business may be a valuable asset, referred to it as a "fleeting, intangible something." Jacob v. Miner, 67 Ariz. 109, 120, 191 P.2d 734 (1948).

Defendants contend that there was no evidence offered to fix the value of the alleged good will of the drug business. The existence of good will was shown during the trial when the successful operation of the business was proven. 38 C.J.S. Good Will § 2. The financial statements of the business for the years prior to dissolution were in evidence indicating that substantial net profits were earned.

No objections were made by the defendants to the order appointing the master and the order of reference. In effect, defendants' assignment of error relative to the inclusion of good will attacks the propriety of the trial court's reference. If either party desires to controvert the propriety of the reference, the proper practice would be to move for a revocation of the reference in the court below. Failure to make such a motion constitutes acquiescence and consent to the reference and the question cannot be initially raised on appeal. Coyner v. United States, 103 F.2d 629, 635 (7th Cir. 1939).

The master's report elaborated on the factors which were considered in arriving at the value of $35,000: (a) past earnings (b) trend of competition and (c) trend of earnings and general business conditions. Rule 52(a) of the Arizona Rules of Civil Procedure, 16 A.R.S., provides that the findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. This Rule also provides that findings of fact shall not be set aside unless clearly erroneous. We

therefore may not properly set aside a judgment which rests upon findings of fact made by a special master and adopted by the trial court unless such findings are clearly erroneous. Dyker Bldg. Co. v. United States, 86 U.S.App.D.C. 297, 182 F.2d 85, 87 (1950). The rule as laid down in Camden v. Stuart, 144 U.S. 104, 118, 12 S.Ct. 585, 590, 36 L.Ed. 363 (1891), as to the status of the master's findings is well stated:

> "In cases of this kind, referred to a master to state an account, depending, as they do, upon an examination of books * * * 'his conclusions have every reasonable presumption in their favor, and are not to be set aside or modified unless there clearly appears to have been error or mistake on his part.'"

The problem of reviewing the master's findings of fact is essentially the same as the problem of reviewing the trial court's findings of fact when it is the initial trier of facts. United States v. Village of Highland Falls, 154 F.2d 224, 227 (2d Cir. 1946). Defendants have failed to persuade us that the master's determination was clearly erroneous.

 The defendants' final contention of error is directed to the trial court's refusal to disqualify plaintiff's attorney from proceeding to trial on plaintiff's behalf. The affidavit of John Nichols filed in support of the motion for disqualification stated that an attorney-client relationship had existed between the law firm in which plaintiff's attorney was a partner and the defendants.

The principle which bars an attorney from representing an interest adverse to that of a former client is most often said to be grounded upon the confidential relationship which exists between attorney and client, the courts taking the view that, by imposing this disability upon the attorney, confidential information conveyed by the former client is protected from possible disclosure and wrongful use. See 52 A.L.R.2d 1243, 1250 § 4 and cases cited therein. An attorney's acceptance of employment, however, to act in opposition to his former client is not ipso facto improper. The attorney is not disqualified if his subsequent employment has no reference to the matters with which the previous attorney-client relationship was concerned. Gillett v. Gillett, 269 Mich. 364, 257 N.W. 719, 720 (1934); Klein v. Matthews, 99 Utah 398, 106 P.2d 773, 775 (1940); Adams v. Adams, 156 Neb. 778, 58 N.W.2d 172, 182 (1953).

The duties required of plaintiff's attorney in the instant litigation did not conflict with those involved in his employment by the defendants. Furthermore, as we have pointed out, the foundation of disqualification is the existence of a former confidential relationship. But when two or more clients employ the same attorney in the same business, communications made by them in relation to such business are not privileged inter sese nor are they privileged as between any one of the parties and the attorney. Croce v. Superior Court, 21 Cal. App.2d 18, 68 P.2d 369 (1937). The communications are privileged solely as to strangers, but as between themselves either client can compel the lawyer to testify against the other as to their negotiations. In re Estate of Bauer, 79 Cal. 304, 21 P. 759, 762 (1889). Since these communications are not deemed confidential, there is no impediment to or impropriety in the adverse representation by the attorney. Croce v. Superior Court, supra; Arden v. State Bar of California, 52 Cal.2d 310, 341 P.2d 6, 11 (1959). We hold that the trial court did not err in refusing to disqualify plaintiff's attorney. In so holding, we do not presume to pass upon whether such representation constitutes a violation of the Canons of Legal Ethics, such question not being before this court.

### PLAINTIFF'S APPEAL

The judgment entered herein awarded to plaintiff the value of his interest in the partnership as computed by the master together with interest from the date of dissolution until paid. The plaintiff filed a motion for further accounting to determine the partner-

ship profits for the post-dissolution period and further moved that the judgment be amended to include a sum equal to one-third of the post-dissolution profits. These motions were denied and plaintiff appeals from that portion of the judgment which allowed interest to him and from the denial of the foregoing motions.

As authority for his position that he is entitled to profits, plaintiff relies on A.R.S. § 29–242 which provides:

"When any partner retires or dies, and the business is continued under any of the conditions set forth in subsections A, B, C, E and F, of § 29–241, or, paragraph 2, subsection B, of § 29–238, without any settlement of accounts as between him or his estate and the person or partnership continuing the business, unless otherwise agreed, he or his legal representative as against such persons or partnership may have the value of his interest at the date of dissolution ascertained, and shall receive as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership with interest, or, at his option or at the option of his legal representative, in lieu of interest, the profits attributable to the use of his right in the property of the dissolved partnership; * * *."

The statute clearly gives the plaintiff a choice of rights-interest on the value of his share *or* profits attributable to the use of his share. He cannot have both. The statute is silent as to when the election is required to be made. Our Supreme Court has held that an election made during trial is timely. Hurst v. Hurst, 86 Ariz. 242, 246, 344 P.2d 1001 (1959). In the case at bar, the plaintiff's complaint prayed:

"(a) For an amount equal to one-third of the present value of said Miracle Mile Drug Center business;

"(b) For increments, accumulations, and earnings of said one-third ownership and interest in said Miracle Mile Drug Center business."

Plaintiff contends that he elected to take profits thereby and cites Taliaferro v. Reirdon, 191 Okl. 43, 126 P.2d 696 (1942), for the proposition that a binding election to share in post-dissolution profits can be made in the complaint. Defendants argue, however, that the prayer of the complaint further requested "interest as allowed by law," and therefore no election was made. We cannot agree with defendants that the portion of the prayer requesting interest means interest as allowed under A.R.S. § 29–242 to a retiring partner on the value of his interest in the dissolved partnership. Were this the meaning intended by the plaintiff, it could have been expressed more explicitly, as for example "for interest on said one-third ownership and interest in said * * * business." However, in reading the above-quoted portions of the prayer for relief, we are not convinced that it clearly expresses an election to share in *post-dissolution* profits. We note that plaintiff requested profits attributable to a one-third ownership of the business—he did not request profits attributable to the use of his right in the property of the dissolved partnership.

We cannot accept plaintiff's argument that an election to take profits was asserted in the complaint. The ambiguity of the wording negates any inference of a choice between two alternative and inconsistent rights. Having determined that plaintiff had not exercised the option to take profits when the suit was filed, we are faced with the question of when he was required to indicate to the trial court his preference.

We believe that the election was not required to be made until the plaintiff knew the extent of the profits earned during the post-dissolution period. Otherwise the right of election would be an illusory one. Moseley v. Moseley, 196 F.2d 663, 667 (9th Cir. 1952). Until a full accounting was made, including the period subsequent to dissolution, plaintiff was not equipped with sufficient knowledge to enable him to elect whether to claim interest or a share of the profits. Kreinson v. Commercial Nat. Bank, 323 Pa. 332, 185 A. 756, 757 (1936).

We note in plaintiff's motion for further accounting the following:

"The Court will recall, on October 13, 1961, that counsel for plaintiff requested that the Court at that time direct the Court-appointed Master, Sidney Kaderlan, to include in his accounting, the profits of the partnership business from the date of dissolution, on May 14, 1960, through the date of the accounting. The Court, at this time, advised counsel for the Plaintiff that it was the Court's belief that Plaintiff was not entitled to share in said profits, that his interest in the profits terminated at the date of dissolution, May 14, 1960, * * *."

We find nothing in the record to controvert the above-quoted excerpt which indicates that the date of initial request for inclusion of post-dissolution profits in the accounting coincides with the date of the master's appointment. Therefore it cannot be said that plaintiff was dilatory in exercising his rights and the trial court erred in denying his motion for additional accounting.

Plaintiff's contention that he would be entitled to a one-third share of post-dissolution profits is erroneous. The option as to receipt of post-dissolution profits accorded to a retiring partner under A.R.S. § 29–242 is receipt of "the profits attributable to the use of his right in the property of the dissolved partnership." He no longer shares in the same ratio as prior to dissolution. His share of post-dissolution profits would be the amount earned by his interest in the dissolved partnership, i. e., $12,122.94. To illustrate this simply, let us assume that the value of the retiring partner's interest at dissolution is $5,000 and the continuing partner's interest is $20,000. Irrespective of their proportionate interests prior to dissolution, the retiring partner's share in post-dissolution profits would be one-fifth.

The judgment is affirmed except as to the portion thereof awarding interest to the plaintiff on the $12,122.94, which is hereby reversed. The lower court is instructed to have an accounting of post-dissolution profits prepared for plaintiff's benefit and to allow plaintiff to elect as to interest or profits.

KRUCKER, C. J., and MOLLOY, J., concurring.