466 P.2d 413

L. M. WHITE CONTRACTING COMPANY, a corporation, Appellant and Cross Appellee,

v.

TUCSON ROCK AND SAND COMPANY, a corporation, Appellee and Cross 'Appellant.

No. 2 CA–CIV 690.

Court of Appeals of Arizona, Division 2.

March 12, 1970.

542

Gerald B. Hirsch, Lesher & Scruggs, by D. Thompson Slutes, Tucson, for appellant and cross appellee.

Miller, Pitt & Feldman, by Stanley G. Feldman, Tucson, for appellee and cross appellant.

HATHAWAY, Judge.

This litigation between Tucson Rock and Sand Company as plaintiff and L. M. White Contracting Company as defendant arose out of the latter's refusal to permit the plaintiff to enter upon land owned by the defendant and to remove sand and gravel therefrom. The case was tried to the court sitting without a jury and extensive findings of fact and conclusions of law were rendered. The issues as to plaintiff's right to enter and remove gravel were resolved in its favor, hence this appeal. The trial court, however, denied plaintiff's claim for damages for the period in which its right was denied, which ruling is subject of the cross appeal.

The judgment entered below declared the defendant to be a constructive trustee of the subject property for the plaintiff's benefit, that the plaintiff had a profit a prendre in the property consisting of the right to quarry, sever and remove rock, sand and gravel in such quantities and at such times as it desired and until exhaustion of the rock, sand and gravel deposits, and that it had an easement over the defendant's property to the property which was subject of the profit a prendre. The judgment further ordered that for each cubic yard of material removed by the plaintiff it was to pay to the defendant five cents per cubic yard, that the defendant could make use of the subject property coextensive with that of the plaintiff, and that the constructive trust would terminate upon depletion and exhaustion of all rock, sand and gravel deposits on the subject property.

The trial court made the following factual findings which, in the absence of a "clearly erroneous" showing, we accept as true. Ashton Company, Inc., Contractors and Engineers v. State, 9 Ariz.App. 564, 454 P.2d 1004 (1969). At all material times, the defendant and its predecessor in interest (L. M. White Contracting Company, a sole proprietorship) had extremely close business relationships with the plaintiff. The defendant and plaintiff had interlocking boards of directors, containing common directors; had common officers, managerial employees and stockholders, and common, though not identical, business pursuits. At all times up to the year 1962, Mr. L. M. White was president of the plaintiff corporation and at all times up to and including May, 1955, he was also president of the defendant corporation. (L. M. White Contracting company was incorporated in 1950)

In 1947, the plaintiff purchased a parcel of real property located south of Speedway Boulevard (hereinafter referred to as south borrow pit). This property was purchased because both plaintiff and L. M. White Contracting Company (defendant's predecessor in interest) were in need of new sources from which to quarry building materials and the property was purchased with the specific intent that it be used as a borrow pit for the mining or quarrying of such materials. At the time of purchase, an oral agreement was entered into between plaintiff and L. M. White Contracting Company, the substance of which was that they would jointly engage in quarry operations in the borrow pit, each having the right to use the pit to the same extent as the other, the only difference being that for each cubic yard of material removed by White Company, it would pay plaintiff at the rate of five cents per cubic yard. Each party had the right to remove as much material as it wanted, as and when needed and desired, and for so long as the source lasted.

Pursuant to this agreement, both parties removed materials from the south borrow pit and between 1951 and 1959, the defendant removed large quantities of material to be used on a very large construction job at Davis Monthan AFB in which plaintiff had no interest. The effect of defendant's quarrying activity, coupled with plaintiff's, was to substantially exhaust the deposits in the south borrow pit. At that time, and at the time of trial, deposits suitable for use as building materials and available for quarrying were scarce. The availability of such deposits were extremely important to businesses such as plaintiff's and defendant's, and such availability afforded a substantial competitive advantage to them. The plaintiff was not engaged in selling raw materials and would not have allowed the defendant to remove materials from the south borrow pit were it not for the close relationship between the plaintiff and defendant and their oral agreement.

When the defendant's quarrying operations in the borrow pit achieved such magnitude because of the Davis Monthan construction project, Mr. White, then president of both plaintiff and defendant, instructed employees of both corporations to find additional materials' sources for their mutual use. Plaintiff, in consideration of a loan to one Martin, was successful in obtaining the privilege of quarrying from Martin's land for both corporations. Also, the defendant's general manager who was also a stockholder and director in the plaintiff corporation, located additional deposits of building materials on a realty parcel north of Speedway (hereinafter referred to as the north borrow pit). This parcel was in the general vicinity of the south borrow pit.

The plaintiff and defendant thereupon entered into an oral agreement, the substance of which was that the defendant would purchase this parcel and that both parties would jointly engage in quarrying operations in the new borrow pit, each having the right to use it to the same extent as the other, the only difference being that for each cubic yard of material re-moved by plaintiff it would pay defendant at the rate of five cents per cubic yard. In all other respects the use of the pit was to be co-extensive, each party having a right to remove as much material as it wanted, as and when needed and desired, and for so long as the material lasted. (In substance, this agreement was the same as the agreement with reference to the south borrow pit, the only difference being that the defendant expended its funds for purchase of the property and the plaintiff paid for the quantities of material removed).

The latter agreement was entered into by mutual assent and in good faith, each party standing in a position of trust and confidence as to the other, and the defendant enjoyed a position of superiority by reason of the common officers, directors and stockholders. In other words, the transaction was not consummated at arms-length. In accordance with this agreement, the defendant purchased the north borrow pit property in 1953 and acquired rights of ingress and egress thereto. Plaintiff, because of the rights it believed it had acquired by virtue of this agreement, allowed the defendant to continue its quarrying operations in the south borrow pit.

The defendant continued quarrying in the south borrow pit after 1953 and removed substantial amounts of material therefrom; the combination of defendant's and plaintiff's respective quarrying operations resulted in exhaustion of the materials in the south borrow pit. It was not until these materials had been exhausted that the parties commenced quarrying in the north borrow pit. However, when they did begin use of the north pit, their operations were in all respects co-extensive, each removing the material it desired, when and as needed, and in such quantities as needed, the plaintiff paying the defendant in the same fashion as defendant had paid plaintiff for materials removed from the south borrow pit. The defendant was not engaged in selling raw materials, and except for the 1953 agreement with the plaintiff, would not

have allowed plaintiff to quarry from the north borrow pit. The availability of the building materials deposits in the north borrow pit gave both plaintiff and defendant a competitive advantage and the plaintiff would suffer substantial damage if unable to quarry materials from this source. The defendant, by reason of its use of the south borrow pit and the Martin property, had derived substantial benefit therefrom. However, in 1967, just prior to the filing of this lawsuit, the defendant denied plaintiff access to the north borrow pit.

The trial court concluded that a confidential and fiduciary relationship had existed between the plaintiff and defendant; that the plaintiff relied upon the 1953 oral agreement as to its right in the north borrow pit; that a valid oral contract existed between the parties entitling the plaintiff to remove materials from the north borrow pit; that since the defendant had received substantial benefits from this agreement and the prior oral agreement permitting it to quarry in the south borrow pit, it would be unfair, unjust, unconscionable and would unjustly enrich the defendant to permit it to deny the plaintiff the benefit of the oral agreement pertaining to the north borrow pit; that the defendant had an equitable duty to give plaintiff the benefit of the 1953 oral agreement and that its denial thereof constituted a constructive fraud; and that it would be unjust and wrongful to permit the defendant to deny the plaintiff the benefit of the north borrow pit.

It additionally concluded that plaintiff and defendant were engaged in a joint enterprise in the operation of both borrow pits; that when plaintiff acquired the north borrow pit in 1953, it was under a duty to acquire same for the joint benefit of both parties; that the statute of frauds was inapplicable; that plaintiff had the same right to remove material from the north borrow pit as defendant had as to the south borrow pit; that the defendant held title to the north borrow pit property as trustee of a constructive trust for the plaintiff's benefit; that the plaintiff had

the right to remove and quarry rock, sand and gravel from the north borrow pit in such quantities as it desired, at its own convenience, and until the north borrow pit should be depleted, providing it paid defendant the sum of five cents per cubic yard of materials removed; that plaintiff's right in the north borrow pit and the constructive trust imposed upon defendant would terminate upon depletion of the materials in the north borrow pit; that plaintiff was entitled to share the defendant's right of access to and egress from the north borrow pit; and that plaintiff had failed to prove the amount of damages sustained by it subsequent to defendant's attempt to deny it access to the north borrow pit.

The defendant contends that the trial court erred (1) in declaring the defendant a constructive trustee of the north borrow pit for the benefit of the plaintiff and (2) in declaring the plaintiff to be the owner of a profit a prendre in the north borrow pit. As to the latter contention, we agree with defendant that a profit cannot be created by parol, but must be created by grant or prescription. 28 C.J.S. Easements § 3f; 25 Am.Jr.2d Easements and Licenses § 4. The defendant does concede, however, that a profit a prendre can arise out of a constructive trust and therefore be enforceable notwithstanding the statute of frauds. It is true that the statute of frauds does not apply to constructive trusts in land which arise by operation of law and not by agreement. Smith v. Connor, 87 Ariz. 6, 347 P.2d 568 (1959); Condos v. Felder, 92 Ariz. 366, 377 P.2d 305 (1962); 3 Bogert Trusts and Trustees, 2nd Edition, § 472. The forms and varieties of constructive trusts are practically without limit and courts do not hesitate to impose them when necessary to obtain complete justice. Linder v. Lewis, Roca, Scoville & Beauchamp, 85 Ariz. 118, 333 P.2d 286 (1958).

The gravamen of defendant's argument is that the evidence was insufficient to support imposition of a construc-

tive trust. Proof of a constructive trust must be established by clear and convincing evidence. King v. Uhlmann, 103 Ariz. 136, 437 P.2d 928 (1968), and appellate courts do not interfere with the trial court's determination as to the sufficiency of the evidence unless it can be said, as a matter of law, that no one could reasonably find the evidence to be clear and convincing. Murillo v. Hernandez, 79 Ariz. 1, 281 P.2d 786 (1955). Applying this rule, we cannot say that the trial court's finding should be disturbed. It is true, as contended by defendant, that there was no actual fraud on its part in acquiring title to the north borrow pit. However, a constructive trust expresses the idea that a defendant is under an equitable duty to give the complaining party the benefit of the property held. Markel v. Phoenix Title & Trust Co., 100 Ariz. 53, 410 P.2d 662 (1966). As stated by C. J. Cardozo in Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 122 N.E. 378, 380, 381 (1919):

"A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee.

\* \* \* \* \* \*

A court of equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief."

We believe the evidence presented by the plaintiff justified a finding of an implied fraud on the part of the defendant, i. e., a breach of a fiduciary relationship. Prior to the acquisition of the south borrow pit, the parties agreed that acquisition of materials' sources was necessary. There term "joint enterprise" is sometimes used interchangeably with the term "joint venture" to describe a non-profit undertaking for the mutual benefit of the parties. Shook v. Beals, 96 Cal.App.2d 963, 217 P. 2d 56, 18 A.L.R.2d 919 (1950); Connor v. Great Western Savings & Loan Association, 69 Cal.App.2d 850, 73 Cal.Rptr. 369, 447 P.2d 609 (1968). The relationship is founded on the consensual agreement of the parties, the essential elements being (1) the agreement (2) a common purpose (3) a community of interest and (4) an equal right of control. West v. Soto, 85 Ariz. 255, 336 P.2d 153 (1959).

What was the relationship, therefore, between plaintiff and defendant? As stated in Paul v. North, 191 Kan. 163, 380 P.2d 421 (1963):

"Fiduciary relationships recognized and enforceable in equity do not depend upon nomenclature; nor are they necessarily the product of any particular legal relationship. [citations omitted] They may arise out of conduct of the parties evidencing an agreement to engage in a joint enterprise for the mutual benefit of the parties. [citations omitted] But they necessarily spring from an attitude of trust and confidence and are based upon some form of agreement, either expressed or implied, from which it can be said the minds have met in a manner to create mutual obligations." 380 P.2d at 426.

We are of the opinion that the evidence established a joint enterprise. As joint entrepreneurs, plaintiff and defendant had an obligation of loyalty to the joint concern, and a duty to act in good faith, fairly and honestly in their dealings inter sese as to matters pertaining to the enterprise. Ghiz v. Millett, 71 Ariz. 4, 222 P.2d 982 (1950); Boyd v. Head, 92 Idaho 389, 443 P.2d 473 (1968); Lynch v. Mac-Donald, 12 Utah 2d 427, 367 P.2d 464 (1962). The title of a joint venturer in the joint venture assets is that of a beneficiary of a constructive trust, and one who acquires title to property for the joint venture is a trustee even though he buys and pays for the property with his own funds. Jaffe v. Heffner, 173 Cal.App.2d 512, 343 P.2d 374 (1959); 48 C.J.S. Joint Adventures § 5b. We believe the trial court was justified in concluding that when the plaintiff and defendant, by their concerted

action, willingly and knowingly acted for one another in a manner to impose mutual trust and confidence, that a fiducial relationship arose. Under the circumstances presented here, the defendant would be unjustly enriched if it were permitted to deny plaintiff's interest in the north borrow pit. Through the employment of a constructive trust device, unjust enrichment is prevented.

The plaintiff has cross appealed from the trial court's refusal to award it damages for the approximately 8 months period it had been denied access to the north borrow pit. It is true that the trial court expressly found that the plaintiff would be required to expend approximately sixty-five cents per cubic yard if forced to haul materials from sites other than the north borrow pit and that it would sustain substantial damage if unable to quarry from the north borrow pit. These findings, however, were relative to the "unfairness" of allowing the defendant to deny plaintiff's interest.

■ The plaintiff had the burden of proof in establishing its damages. Patania v. Silverstone, 3 Ariz.App. 424, 415 P.2d 139 (1966); Gilmore v. Cohen, 95 Ariz. 34, 386 P.2d 81, 11 A.L.R.3d 714 (1963). The only testimony as to plaintiff's damages was that of its general manager who was also the president and majority stockholder. We have scrutinized this testimony and note that it reflects certain inconsistencies and is also somewhat predicated on speculation. He testified that the cost of hauling materials from another site, when access to the north borrow pit was denied, was increased by sixty-five to seventy cents because an additional distance of seven miles was travelled. His response to questioning by the court indicated that this seven-mile figure would apply only to instances where the materials would have been dispatched from the plant located near the south borrow pit and that the additional hauling distance was a variable factor.

■ Although the testimony of this witness was not contradicted, the trial court was not bound to accept it when its accuracy was impaired. Graham v. Vegetable Oil Products Company, 1 Ariz.App. 237, 401 P.2d 242 (1965). If this testimony is disregarded, and we would have no quarrel with the trial court's refusal to give it credence, there is no evidence of the extent of plaintiff's damage. We thus find no error in the refusal to allow damages.

Judgment affirmed.

HOWARD, C. J., and KRUCKER, J., concur.