501 P.2d 576

Martha Albala NITRINI, Appellant,

v.

Louis FEINBAUM, Pioneer National Trust Company of Arizona, Successor in Interest to Tucson Title Insurance Company, and Trustee under Trust 221212; Louis Feinbaum, Administrator with Will Annexed of the Estate of John Albala, Deceased; Jay's Manufacturing Company, a New Jersey corporation, Appellees.

No. 2 CA–CIV 1166.

Court of Appeals of Arizona, Division 2.

Oct. 10, 1972.

Rehearing Denied Nov. 6, 1972.

Review Denied Dec. 5, 1972.

Feldman, Wolin & Lahr, P. C., by Herbert E. Lahr and Marvin Wolin, Tucson, for appellant.

Goldbaum & Goetz, by Arthur Goldbaum, Tucson, for appellees.

HOWARD, Judge.

The plaintiff-appellant brought a declaratory judgment action to determine the rightful owner of the proceeds from the sale of property held in a land trust. Defendants Feinbaum and Jay's Manufacturing counterclaimed, seeking imposition of a trust. The action was tried to the court sitting without a jury and seventeen findings of fact and six conclusions of law were rendered.

The judgment entered below declared that John Albala, plaintiff's deceased former husband, held the beneficial interest in Trust Number 221212, of which Pioneer National Trust Company of Arizona was trustee, as either a resulting or constructive trustee for John Albala, Samuel Albala and Louis Feinbaum in equal shares. The trial court also declared that the statute of limitations which had been raised by the plaintiff as a defense to the defendants' counterclaim was not applicable, and in no event would it have begun to run until there was a repudiation of the trust relationship or an adverse position was taken by the trustee.

We will not set forth the findings in *haec verba*, since after reviewing the record we are of the opinion that the findings are supported by the evidence, but will present a summary of the pertinent facts. In reviewing findings of fact on appeal this court is required to accept them as true unless they are clearly erroneous or unsupported by any credible evidence. Rule 52(a), Ariz.R.Civ.P., 16 A.R.S.; Bevins v. Dickson Electronics Corp., 16 Ariz. App. 105, 491 P.2d 494 (1971). We also must view the record in a light most favorable to upholding the judgment. Bevins, supra; Kubby v. Crescent Steel, 105 Ariz. 459, 466 P.2d 753 (1970).

The trial court found that at the time of John Albala's death on December 28, 1963, the records of Tucson Title Insurance Company showed that he held a 100% beneficial interest in Trust Number 221212, the trust res being a parcel of land located in Pima County, Arizona. For many years prior to his death, John Albala, his brother, Samuel Albala, and Louis Feinbaum, defendant and ancillary executor of John Albala's estate, were associated in business in New York City and elsewhere as the sole shareholders and officers of the defendant Jay's Manufacturing Company, Inc., and as the sole partners in a partnership known as S & J Company. In August, 1957, an agreement was made between Jay's and S & J Company whereby Jay's agreed to lend money to the partnership for the purpose of investing in the purchase of land in Arizona. The property in question, a parcel of approximately 161.86 acres, was purchased in December, 1958, and title was taken in the name of Tucson Title Insurance Company as Trustee with John Albala as beneficiary. On the same day as the purchase, John Albala transferred a one-third beneficial interest in the Trust to Samuel Albala, and a one-third beneficial interest in the Trust to Louis Feinbaum. The trial court admitted into evidence the agreement between Jay's and S & J Company, as well as receipts showing that subsequent payments were made by both companies to Tucson Title.

In March, 1959, the three partners executed an option agreement to sell the trust property, together with a contiguous parcel owned solely by John Albala, and a new trust agreement was entered into between Tucson Title Insurance Company, the three partners, and the new purchasers, as to the 161.86 acre parcel. Thereafter the three partners assigned all their respective rights, title and interest in the trust to Jay's Manufacturing Company, Inc. Subsequent to this assignment to Jay's the purchaser defaulted on his obligations and it was necessary to institute quiet title proceedings to cancel the contract of sale. The attorney who had represented the deceased and the partnership testified that based upon his advice to John Albala in person and to Louis Feinbaum on the telephone, the three partners assigned the beneficial interest from Jay's Manufacturing Company, Inc. to John Albala. The sole purpose of the assignment was to facilitate

the quiet title action since Albala was a resident of Tucson, Arizona and Jay's was a foreign corporation not authorized to do business in this county. To the best of his knowledge no consideration was paid for this assignment, although the agreement did allege consideration. John Albala then sued to quiet title and as a result thereof the subject parcel was returned to Tucson Title Insurance Company as Trustee in September, 1961. Thereafter no further assignments were made so that at the time of his death in December, 1963, the records of Tucson Title Insurance Company reflected that the entire beneficial interest in the Trust was in John Albala. However, the tax returns, prepared and filed on the property held in the Trust, were based exclusively upon information supplied by John Albala to a certified public accountant and were *partnership* returns.

In March, 1964, after John Albala's death, the attorney for the two New York executors addressed an inquiry to Tucson Title concerning the payments required on the trust property. The answering letter advised that John Albala held the 100% beneficial interest in the trust, but Louis Feinbaum testified that he had not seen this letter until trial. Thereafter, in July, 1964, an agreement was signed by the plaintiff, Samuel Albala and Louis Feinbaum, in which it was agreed that at the time of the death of John Albala, he, Louis Feinbaum, and Samuel Albala were the owners of equal interests, directly or beneficially, of certain real property situated in the State of Arizona, including the subject property. Almost three years later, in March, 1967, the plaintiff, as a legatee under the deceased's will, filed formal objections to the account of the executors in the New York Probate which listed one-third of the value of the trust property as an estate asset. Her objection was that the property was owned solely by the decedent. Her complaint for a declaratory judgment was not filed until January, 1970. It appears that plaintiff married the deceased in October of 1960 or 1961, but was unable to prove the exact date of marriage.

The plaintiff-appellant has raised three questions on appeal: (1) Was it error for the court to refuse to determine whether the trust was either a resulting or a constructive trust? (2) Was it error for the court to deny appellant's defense of the statute of limitations? (3) Was it error for the court not to exclude the testimony of George Morse under the attorney-client privilege?

Concerning the first question, appellant claims it was prejudicial error for the trial court to fail to distinguish between a resulting and a constructive trust. We do not agree. Although the Restatement of Trusts, the Restatement of Restitution, and the treatises on trusts explain the fine distinctions between resulting and constructive trusts, there is some confusion between these two implied-in-law trusts:

". . . —Resulting and constructive trusts are distinguishable, [footnote omitted] but there is some confusion between them. [footnote omitted] . . . a resulting trust involves a presumption, implication, or supposition of law of an intention to create a trust, [footnote omitted] whereas a constructive trust is entirely independent of any actual or presumed intention of the parties and is frequently imposed against the intention of the trustee. [footnote omitted] In fine theory, however, the ultimate distinction between the two classes of trusts by operation of law is difficult to perceive and to state, for the reason that a resulting trust, while not involving a wrong, fraud, or unconscientious act, does inherently involve a certain antagonism between the trustee and the beneficiary, [footnote omitted] whereas a constructive trust historically and inherently involves an extension of the doctrine of equitable consideration to cases of fraud, actual or constructive, and at times involves only a constructive fraud that is not much more in substance than a refusal to perform a duty required in equity. [footnote omitted]" 54 Am.Jur. Trusts § 188 (1945).

There are only three situations in which the trust which arises is properly called a resulting trust:

". . . (1) where an express trust fails in whole or in part; (2) where an express trust is fully performed without exhausting the trust estate; (3) where property is purchased and the purchase price is paid by one person and at his direction the vendor conveys the property to another person. In each of these cases there is an inference that the person taking title to the property is not intended to have the beneficial interest, . . ." 5 A. W. Scott, Scott on Trusts § 404.1 (3rd ed. 1967).

We find that the facts of this case do not exactly bring them within the requirements necessary for the creation of either an express or a resulting trust, notwithstanding the proof at trial that partnership funds were used for the initial purchase of the the trust property and the subsequent parol understanding between the parties that the sole purpose for the transfer of the property from Jay's to John Albala was to enable him to handle the quiet title action.

We do believe, however, that the evidence presented by the defendants is sufficiently clear and convincing to support the conclusion that John Albala held the beneficial interest in the land trust as a constructive trustee for himself and his partners. Proof of a constructive trust must be established by clear and convincing evidence, L. M. White Contracting Company v. Tucson Rock & Sand Company, 11 Ariz.App. 540, 466 P.2d 413 (1970); King v. Uhlmann, 103 Ariz. 136, 437 P.2d 928 (1968), and appellate courts will not interfere with the trial court's determination as to the sufficiency of the evidence unless it can be said, as a matter of law, that no one could reasonably find the evidence to be clear and convincing. L. M. White, supra; Murillo v. Hernandez, 79 Ariz. 1, 281 P.2d 786 (1955).

A constructive trust has been defined as ". . . the device used by chancery to compel one who unfairly holds a property interest [footnote omitted] to convey that interest to another to whom it justly belongs. . . . It is merely a tool of the court to work out an equitable result in the simplest fashion." G. Bogert, Trust and Trustees § 471 (2nd ed. 1960). As we also pointed out in L. M. White Contracting, supra, there is no set or unyielding formula in decreeing a constructive trust, for the equity of the transaction determines the measure of relief. Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 122 N.E. 378 (1919).

Therefore, we do not find it prejudicial error that the court below denominated the trust as either resulting or constructive, because we look to substance and not labels. Nor is it fatal that appellees' brief proposes a resulting trust. The evidence, fairly construed, supports a finding of the necessary elements of a constructive trust, Dawson v. McNaney, 71 Ariz. 79, 223 P.2d 907 (1950), and courts do not hesitate to impose constructive trusts when necessary to obtain complete justice. Linder v. Lewis, Roca, Scoville & Beauchamp, 85 Ariz. 118, 333 P.2d 286 (1958); L. M. White Contracting, supra. The important question is not whether there was a resulting or a constructive trust. Rather, the pivotal question is whether, taking into account all the facts, circumstances and relationships between the parties, John Albala held the beneficial interest in the trust as a voluntary trustee for himself and his two partners, or whether the entire beneficial interest in the trust should devolve to his estate. We agree with the trial court's conclusion that John Albala held the beneficial interest as a trustee for himself and his partners. Furthermore, the appellant herself seems to agree with this conclusion, as indicated in her opening brief:

"Based upon the facts which were adduced by the evidence at the trial, the Arizona cases on point, and the treatices (sic) defining the distinction between the trusts, it is Appellant's conetention (sic) that a constructive trust was created by operation of law."

Appellant's second question deals with the application of the statute of limitations and she asks: "If there is a constructive trust, are the Appellees barred from asserting their claim under that trust by the Arizona Statute of Limitations, A.R.S., Section 12–550, which states:"

"Actions other than for recovery of real property for which no limitation is otherwise prescribed shall be brought within four years after the cause of action accrues, and not afterward."

■ There are two classes of cases in which equity uses the constructive trust as a device to work out equitable results: ". . . (1) those where there is unethical conduct in the acquisition of property, and (2) instances where the securing of title was rightful but the retention of the property was wrongful." G. Bogert, Trusts and Trustees § 953 (2nd ed. 1960). The statute of limitations begins to run at different times depending upon the facts of the particular case. The prevailing view under category one above is that:

"If the reason that equity will decree a constructive trust is that the title to property has been wrongfully *acquired*, then a cause of action for its recovery immediately accrues, without need for a repudiation of the obligation by the title-holder, and the Statute of Limitations should begin to run at once, against the injured party, assuming that he is competent and has actual or imputed notice." Bogert, supra, § 953 at 486.

*See also*: Annot. 55 A.L.R.2d 220 (1957); 90 C.J.S. Trusts § 456e, Constructive Trusts (1955).

On the other hand, in the unjust enrichment category, the statute of limitations does not start running until there is a repudiation by the trustee, since until then there is no cause of action. Bogert, supra, § 953 at 490. *See also*: Gabitzch v. Cole, 95 Ariz. 15, 386 P.2d 23; Butler v. Hyland, 89 Cal. 575, 26 P. 1108 (1891).

It is obvious that the case *sub judice* falls within the latter category. The facts demonstrated and the trial court found that at "no time during the lifetime of John Albala, did he claim the entire beneficial interest in Trust Number 221212 and at all times during his lifetime, his actions were consistent with, and in support of, the position that the beneficial interest in Trust Number 221212 was held in himself, Samuel Albala and Louis Feinbaum."

It is appellant's position that since John Albala did not repudiate the trust during his lifetime, the four-year limitations period began to run against defendants at Albala's death, since the understanding of the partners was that he was to reassign the beneficial interest some time after the quiet title action. She asserts in the alternative that if the statute of limitations did not begin to run at Albala's death in December, 1963, it started to run in March, 1964, when the attorney for the New York executors received a letter from Tucson Title advising that the beneficial interest in the land trust was solely in the name of John Albala.

■ In support of the former position appellant has cited only the case of Becker v. Neurath, 149 Ky. 421, 149 S.W. 857 (1912). However, this case is factually dissimilar to the case *sub judice* since in *Becker* there was a specific understanding between the parties and repeated declarations by the deceased that upon her death her husband's children were to receive the property in question.

Contrary to appellant's position, our review of the record and pertinent authorities leads us to agree with the trial court's finding that the statute of limitations did not begin to run prior to March, 1967, when the appellant filed formal objections in the New York probate proceedings. When appellant entered into an agreement with the deceased's two partners in July, 1964, acknowledging deceased's ownership of a one-third interest in the trust property, the partners had no reason to seek a judicial declaration of their rights. This supports the trial court's finding that "at no time prior to March 1967, was any question raised or assertion made by any-

one to show a repudiation of the fact that the beneficial interest in Trust Number 221212 was held by John Albala, Samuel Albala and Louis Feinbaum in equal shares, nor was any adverse claim made". We therefore hold that appellant was estopped to assert that the statute of limitations began to run at the death of John Albala. *See* G. Bogert, supra, § 953 at p. 500 for cases holding that where the constructive trustee recognizes the equitable interest of the cestui que trust, ". . . the Statute of Limitations does not run against the beneficiary as long as the title-holder maintains this attitude." Bogert, supra, at 498.

The appellant's third question on appeal deals with the admission into evidence of attorney George Morse's testimony concerning his advice to John Albala that the partners assign their respective interests to Albala in order to bring the quiet title action. Appellant contends that admission of this testimony was a violation of Arizona Revised Statutes, § 12–2234, commonly known as the "Attorney-Client Privilege":

> "In a civil action an attorney shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment. . . ."

The principle which bars an attorney from representing an interest adverse to that of a former client is said to be grounded upon the confidential relationship which exists between attorney and client, and courts take the position that by imposing this disability upon the attorney, confidential information is protected. Nichols v. Elkins, 2 Ariz.App. 272, 408 P.2d 34 (1965).

We do not believe under the facts of this case that it was error for the court to allow Morse to testify, since his testimony established that he represented all the partners in the quiet title transaction in connection with the trust property. When "two or more clients employ the same attorney in the same business, communications made by them in relation to such business are not privileged inter sese nor are they privileged as between any one of the parties and the attorney." Nichols v. Elkins, supra at 277, 408 P.2d at 39; Croce v. Superior Court, 21 Cal.App.2d 18, 68 P.3d 369 (1937). We hold that the trial court did not err in admitting the testimony of the attorney for the partnership.

Affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.