30 P.3d 140

**In re the ESTATE OF James I. FISHMAN, Deceased.**

No. 2 CA–CV 00–0065.

Court of Appeals of Arizona, Division 2, Department B.

Aug. 30, 2001.

Clifford G. Bleich Law Office, By Marianne Poston, Tucson, for Plaintiff/Appellant Mara Lee, as Personal Representative of the Estate of James I. Fishman.

Robin C. Carter, Attorney–at–Law, P.C., By Robin C. Carter and Law Offices of Dennis A. Rosen and William C. Smitherman, Tucson, for Defendant/Appellee Carol Fishman.

**560**

DRUKE, J.

¶ 1 Appellant Mara Lee, as personal representative of the estate of James Fishman, challenges the trial court's grant of summary judgment in favor of appellee, Carol Fishman, James's widow. The personal representative claims Carol was unjustly enriched when she received $125,000 for assigning and transferring to Best Supply, Inc., 5,000 shares of its stock that James owned at his death. We agree the trial court improperly granted summary judgment and reverse.

■■ ¶ 2 In reviewing the grant of summary judgment, we determine de novo whether there are any genuine issues of material fact. *Bothell v. Two Point Acres, Inc.,* 192 Ariz. 313, 965 P.2d 47 (App. 1998). When the material facts are undisputed, we determine whether the trial court correctly applied the law. *Bills v. Arizona Property and Cas. Ins. Guar. Fund,* 194 Ariz. 488, 984 P.2d 574 (App. 1999).

¶ 3 The undisputed material facts in this case are as follows. In 1989, James and two other men incorporated Best Supply, a janitorial supply company, and the corporation issued each of them 10,000 shares of stock. The stockholders and their wives then executed a "Stock Retirement Agreement," the relevant part of which provided that "[u]pon the death of any Stockholder, the Corporation shall purchase, and the estate of the decedent shall sell, all of the decedent's shares in the Corporation. The purchase price of such stock shall be $250,000." The Agreement also provided that Best Supply would be "the applicant, owner and beneficiary of life insurance policies" on the stockholders and would pay the premiums on those policies. The policy on James's life was for $500,000 and named Best Supply and Carol as beneficiaries, each to receive $250,000 on James's death.

¶ 4 James died in February 1996, leaving as survivors Carol and three adult children from James's prior marriage. Because James died intestate and because the stock certificate issued to him could not be found, the 10,000 shares of stock were presumptively community property under A.R.S. § 25–211.

Thus, Carol retained 5,000 shares as her one-half of the community, and the other 5,000 shares, James's one-half of the community, passed to his estate pursuant to A.R.S. § 14–2102.

¶ 5 In April 1996, after Carol had received the $250,000 in insurance proceeds from the insurance company, she executed an assignment that provided, in relevant part:

> [Pursuant to the Agreement,] and for good and valuable consideration, which includes $250,000 in hand received, [Carol] hereby assigns and transfers unto Best Supply, Inc., [James's] interest in ten thousand (10,000) shares of … common stock of Best Supply, Inc…. [Carol] represents and warrants that (i)[she] has all necessary power and authority to execute and deliver this Assignment and to consummate the transactions contemplated hereby, (ii)[she] has good and marketable title to the shares being transferred hereby, free and clear of all liens, encumbrances, claims and restrictions of any kind, and (iii) the shares being transferred hereby represent the entire ownership interest in Best Supply, Inc. of [Carol] and/or James I. Fishman ….

¶ 6 In January 1997, the personal representative filed a complaint against the law firm that had prepared the assignment, Best Supply, and one of the corporate officers and his wife, David and Rosetta Hunt, alleging breach of contract, conversion, breach of fiduciary duty, and constructive trust. After the dismissal of the law firm and discovery by the parties, the personal representative amended the complaint to add Carol as a defendant, alleging claims of conversion and constructive trust against her. Carol and the personal representative then filed cross-motions for summary judgment. In her motion, Carol contended the estate had no interest in the insurance proceeds she had received, citing *In re Estate of Agans,* 196 Ariz. 367, 998 P.2d 449 (App. 1999). In her motion, the personal representative argued, in part, that Carol understood she had received the $250,000 to purchase the 10,000 shares of stock, that "she had no power or authority" to assign the estate's shares to the corporation, and that she was holding the amount due the estate as a constructive trustee. The

trial court granted summary judgment in favor of Carol, and this appeal followed.[1]

¶ 7 On appeal, the personal representative asserts that although Carol "received the [insurance] proceeds without fault, she has retained them wrongfully" and, thus, "holds her husband's share of the proceeds in constructive trust," citing *Nitrini v. Feinbaum*, 18 Ariz.App. 307, 501 P.2d 576 (1972). There, we defined a constructive trust as " 'the device used by chancery to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs.' " *Id.* at 311, 501 P.2d at 580, *quoting* G. Bogert, *The Law of Trusts and Trustees* § 471 (2d ed.1960). *See also Burch & Cracchiolo, P.A. v. Pugliani*, 144 Ariz. 281, 697 P.2d 674 (1985) (constructive trust imposed where person wrongfully holding property would be unjustly enriched); 5 Austin W. Scott & William F. Fratcher, *The Law of Trusts* § 462 (4th ed.1989) (constructive trust arises where one would be unjustly enriched if permitted to retain property); Restatement of Restitution § 160 (1937) (constructive trust imposed to prevent unjust enrichment). Accordingly, constructive trusts have been used, as our supreme court observed in *In re Estate of Rose*, 108 Ariz. 101, 104, 493 P.2d 112, 115 (1972), "whenever title to property has been obtained through actual fraud, misrepresentation, concealment, undue influence, duress, or through any other means which render it unconscionable for the holder of legal title to continue to retain and enjoy its beneficial interest." Thus, although typically imposed where property has been obtained wrongfully, constructive trusts are also used where property has been acquired mistakenly. *See* George G. Bogert & George T. Bogert, *The Law of Trusts and Trustees* § 474, at 94 (rev.2d ed. 1978) ("Retention of the property after discovery of the mistake would be unconscionable."). Both *Nitrini* and *French v. French*, 125 Ariz. 12, 606 P.2d 830 (App. 1980), contain examples of mistaken acquisitions.

¶ 8 In *Nitrini*, three partners who had equal beneficial interests in a land trust as-signed their interests to one of the partners to facilitate a lawsuit. After the lawsuit, that partner returned the property to the trust but the respective individual interests were never reassigned. Thus, the trust showed that partner owning all of the trust's beneficial interest. After he died, the devisee of his will argued that the decedent had owned the entire beneficial interest in the trust. The trial court rejected the argument and imposed a constructive trust. We affirmed the trial court, finding that clear and convincing evidence supported the conclusion that the decedent "held the beneficial interest in the land trust as a constructive trustee for himself and his partners." 18 Ariz.App. at 311, 501 P.2d at 580. We pointed out that "there is no set or unyielding formula in decreeing a constructive trust, for the equity of the transaction determines the measure of relief," and noted that "courts do not hesitate to impose constructive trusts when necessary to obtain complete justice." *Id.*

¶ 9 Similarly, in *French*, the parents of three children deeded a parcel of land to their eldest son, Clyde, with the understanding that he would hold it for himself, his sister, and his younger brother. After the sister died, Clyde agreed to deed the property to his younger brother's son, Bert, provided Clyde's wife would have a life estate in the property. But, before Clyde died, he transferred ownership to himself and his wife as joint tenants. After he died, the wife conveyed the property in joint tenancy to herself, Bert, and his wife. The trial court found that the parties had intended Bert alone to own the property, with a life estate in Clyde's wife, and imposed a constructive trust. We affirmed, stating that "[a] constructive trust arises when one who has rightfully acquired property may not in good conscience retain it." 125 Ariz. at 14, 606 P.2d at 832.

¶ 10 In this case, we find that the estate presented sufficient evidence to raise a genuine issue of material fact as to whether Carol should in good conscience retain all of the insurance proceeds, even though she

---

1. Before summary judgment was granted, Best Supply filed for bankruptcy, and the Hunts were dismissed from the lawsuit.

rightfully received them as the policy's designated beneficiary. *See In re Estate of Dobert,* 192 Ariz. 248, 963 P.2d 327 (App. 1998) (insurance company obligated to pay life insurance proceeds to beneficiary). Carol testified at her deposition, which the personal representative submitted to the trial court in support of summary judgment, that James had told her "that in order for [a stockholder's] wife to have the [$]250,000, [she] would have [to] sign over any of [her] interest in the stock" because "the stock reverted to the company." Carol thus understood that she "would receive [$]250,000 under this insurance policy, and the stock reverted to the company, and that [she] had to release the company of the stock." Accordingly, she executed the assignment of 10,000 shares of Best Supply stock "for good and valuable consideration, which includes $250,000 in hand received." And Carol represented in the assignment that she had "good and marketable title to the shares being transferred hereby" and that "the shares being transferred hereby represent the entire ownership interest in Best Supply, Inc." But, as discussed above, Carol had an interest in only 5,000 shares of Best Supply stock because the other 5,000 shares had passed to the estate by operation of law upon James's death. Carol thus mistakenly assigned the estate's 5,000 shares of stock to Best Supply for $125,000 and, as a result, ostensibly became a constructive trustee of those funds for the estate.

¶ 11 Carol nonetheless argues that "[t]he proceeds of a life insurance policy in which a third party is named as beneficiary belong exclusively to such beneficiary," relying on *Estate of Agans; Coe v. Winchester,* 43 Ariz. 500, 33 P.2d 286 (1934); *McClain v. Beder,* 25 Ariz.App. 231, 542 P.2d 424 (1975); and three cases from other jurisdictions.[2] We find Carol's reliance on these cases misplaced; neither *Estate of Agans* nor the other cases raised or addressed the imposition of a constructive trust on insurance proceeds.

¶ 12 The issue Division One of this court addressed in *Estate of Agans* was whether a surviving spouse's statutory allowances un-

der A.R.S. § 14–2402 through 14–2404 include life insurance proceeds payable to a third party. After examining the statutes to determine legislative intent, the court held that "the legislature [had] excepted life insurance proceeds from the reach of such allowances." *Estate of Agans,* 196 Ariz. 367, ¶ 1, 998 P.2d 449, ¶ 1. But, in support of her position, Carol points out that Division One stated: "Our courts have recognized that a personal representative generally has no power or duty over insurance proceeds." *Id.* at ¶ 13. It is apparent, however, that this general rule was not necessary to the court's holding and was clearly dictum. *See Creach v. Angulo,* 186 Ariz. 548, 925 P.2d 689 (App. 1996). Division One based its holding in *Estate of Agans* on the legislative intent of the above statutes, observing that "the legislature has expressly identified [in the statutes] those non-probate transfers that can be reached to pay claims and statutory allowances when the estate is insufficient." 196 Ariz. 367, ¶ 16, 998 P.2d 449, ¶ 16.

¶ 13 Moreover, the general rule upon which Carol relies has a well-recognized exception for constructive trusts.

A beneficiary ... may still be required to hold the proceeds of insurance as a constructive trustee in order to prevent a wrong which would result if the proceeds were used by the beneficiary for himself, such as when a third person is deemed to have acquired vested rights in a policy superior to the rights of a named beneficiary. When this is the case, the named beneficiary cannot defeat the rights of such third person by collecting the proceeds of insurance, and if the beneficiary does so he or she will be deemed to hold the proceeds in trust for such third person to the extent of the latter's vested interest therein.

4 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3D* § 58:9, at 58–12 and 58–13 (1997) (footnotes omitted). *See also Hartsock v. Strong,* 21 Md.App. 110, 318 A.2d 237 (1974) (to effectuate partnership buy-sell agreement, personal representative granted constructive trust on insurance proceeds paid to surviving partner as designated beneficia-

---

**2.** *Nance v. Hilliard,* 101 F.2d 957 (8th Cir.1939); *In re Welfer,* 110 Cal.App.2d 262, 242 P.2d 655 (1952); *Heydenfeldt v. Jacobs,* 107 Cal. 373, 40 P. 492 (1895).

ry on policy); 1 Dan B. Dobbs, *Law of Remedies* § 4.3(2), at 590 (2d ed. 1993) ("The constructive trust allows the plaintiff to recover an asset even if he has no legal title to it, so long as that asset is regarded as 'belonging' to him in an equitable sense."). And, if a constructive trustee transfers the trust property to another, the beneficiary can generally reach the proceeds.

> This right to follow property into its product ... [applies] wherever a person wrongfully transfers property in which another has the beneficial interest, whether legal or equitable, and receives other property in exchange therefor. In any such case the person whose property is wrongfully used in acquiring the product can reach the product by ... enforc[ing] a constructive trust ....

5 *The Law of Trusts* § 507, at 554. *See also Mt. Sneffels Co. v. Estate of Scott*, 789 P.2d 464 (Colo.App.1989) (buyer entitled to constructive trust on seller's proceeds when portion of property mistakenly sold to third-party bona fide purchaser and reformation no longer possible); *In re Estate of Knappen*, 237 A.D.2d 677, 655 N.Y.S.2d 110 (1997) (decedent's estate entitled to constructive trust on portion of proceeds received from sale of marital residence); *See* 1 *Law of*

*Remedies* § 4.3(2), at 589–90 (constructive trust may be imposed on "any identifiable kind of property or entitlement in the defendant's hands if, in equity and conscience, it belongs to the plaintiff."). Based on this authority and the record before us, we conclude that the general rule upon which Carol relies may not apply and that the estate established a prima facie claim for a constructive trust on one-half of the insurance proceeds Carol received.[3]

¶ 14 We therefore reverse the trial court's order granting Carol's motion for summary judgment. But, because the estate must establish a constructive trust by clear and convincing evidence, *Nitrini*, we deny the estate's request for summary judgment on appeal and remand the case for further proceedings consistent with this decision.

ESPINOSA, C.J., and HOWARD, P.J., concur.

---

**3.** We also reject Carol's argument that a "constructive trust is an equitable remedy, not a cause of action in itself." *See Murillo v. Hernandez*, 79 Ariz. 1, 281 P.2d 786 (1955) (action sought to establish constructive trust as to one-half interest in realty); *Honk v. Karlsson*, 80 Ariz. 30, 292 P.2d 455 (1956) (equitable action brought to impress constructive trust on property); *Warren v. Whitehall Income Fund*, 170 Ariz. 241, 823 P.2d 689 (1991) (action filed to impose constructive trust on real estate).