494 P.2d 64

**RAMADA INNS, INC., a Delaware corporation, Appellant,**

v.

**MARRIOTT CORPORATION et al., Appellees.**

**No. 1 CA–CIV 1543.**

Court of Appeals of Arizona, Division 1, Department A.

March 2, 1972.

Rehearing Denied March 30, 1972.

Review Denied May 23, 1972.

Burch, Cracchiolo, Levie, Guyer & Weyl by Daniel Cracchiolo, Phoenix, for appellant.

Moeller, Hover, Jensen & Henry by James Moeller, Phoenix, and Browne, Beveridge & DeGrandi by Richard C. Browne, Washington, D. C., for appellees.

CASE, Judge.

This is an appeal from a judgment of the trial court, sitting without a jury, in favor of plaintiffs-appellees and against defendant-appellent. The parties will be referred to herein as they appeared in the trial court.

Plaintiff Marriott Corporation and its subsidiary corporations, Marriott Motor Hotels, Inc. and Camelback Inn Company, all Delaware corporations, instituted an action for a declaratory judgment, alleging that they had an exclusive right to the words "we smile more" to the exclusion of defendant and all others and requested that the court enjoin defendant from the use of these words in the future. After a trial, the court entered judgment, holding that plaintiff Camelback Inn Company was entitled to the exclusive use of these words and enjoined the defendant from using them in its business. Thereafter, defendant filed a motion for new trial and other post-trial motions which were denied and this appeal followed.

The first 15 findings of fact by the trial court concisely state the facts necessary for a determination of the issue herein and are therefore set forth *in haec verba.*

"1. The plaintiffs, Marriott Corporation, Marriott Motor Hotels, Inc. and Camelback Inn Company are all Delaware corporations, qualified to do business in Arizona. Camelback Inn Company is a wholly owned subsidiary of Marriott Motor Hotels, Inc., which is in turn a wholly owned subsidiary of Marriott Corporation.

"2. The defendant, Ramada Inns, Inc., is a Delaware corporation, having its principal place of business and general offices in Phoenix, Arizona.

"3. Prior to August 31, 1967, a now liquidated Arizona corporation known as Camelback Inn Company, all of the stock of which was owned by John B. Stewart and his wife, Louise Stewart, owned and operated a hotel known as Camelback Inn in the vicinity of Phoenix, Arizona.

"4. Shortly before November, 1964, Mr. Stewart adopted the slogan WE SMILE MORE as an advertising and promotional designation for Camelback Inn.

"5. The slogan WE SMILE MORE was first used by Mr. Stewart during November, 1964, on orange celluloid lapel buttons on which the slogan was printed. Two thousand such buttons were ordered in November, 1964, from Jack-Bilt Corporation, Kansas City, Missouri, were received at Camelback Inn and were, from and subsequent to November, 1964, distributed to employees, guests and prospective guests of the hotel both in Arizona and nationwide upon request, of which there were many.

"6. Subsequent orders for lapel buttons bearing the words WE SMILE MORE AT THE CAMELBACK and WE SMILE MORE AT CAMELBACK INN were placed by Mr. Stewart with, and received from, Jack-Bilt Corporation in December, 1964, (1500) and October, 1965, (1000).

"7. Sometime in April, 1966, defendant developed a campaign around the slogan JUST CALL ME SMILEY—WELCOME TO RAMADA and in connection with this campaign in May, 1966, ordered, and subsequently received, white lapel buttons of varying sizes carrying this slogan to be worn by employees and distributed to customers.

"8. Defendant never used the slogan WE SMILE MORE on lapel buttons of any kind, but first used the slogan WE SMILE MORE in advertising which appeared in TV Guide for June 4, 1966. As used, the slogan WE SMILE MORE appeared in black letters on a contrasting white circle. Thereafter, this slogan in this design has appeared on almost every piece of literature, advertising and stationery printed by defendant and used in Arizona, nationwide, and defendant has invested large sums of money in using this slogan.

"9. On August 31, 1967, after liquidation of Camelback Inn Company (an Arizona corporation), the business conducted by Camelback Inn Company (the Arizona corporation) was sold as a going business by John B. Stewart and Louise Stewart, his wife, to Camelback Inn Company, a Delaware corporation. Since August 31, 1967, the business of Camelback Inn has been conducted by Marriott Corporation through its subsidiaries, Marriott Motor Hotels, Inc. and Camelback Inn Company, a Delaware corporation.

"10. Pursuant to the agreement of sale, Camelback Inn Company, the Delaware corporation, acquired for consideration all right, title, and interest, in and to the name CAMELBACK INN and all printed matter and advertising folders which were then in the possession of the Camelback Inn Company, the Arizona corporation, and also acquired a contract to furnish advertising folders then in the process of being printed. In connection with the sale, plaintiff Camelback Inn Company also acquired a supply of lapel buttons bearing the slogan WE SMILE MORE with the words AT THE CAMELBACK appearing beneath the slogan.

"11. Prior to and at the time of the sale of August 31, 1967, Mr. Stewart knew that defendant was using the slogan WE SMILE MORE in connection with its advertising and officials of defendant knew that Mr. Stewart had been and was using the slogan on his lapel buttons in connection with the promotion of the business of the Camelback Inn Company.

"12. In December, 1967, plaintiff ordered and received from Jack-Bilt Corporation 2000 lapel buttons bearing the slogan WE SMILE MORE with the words AT CAMELBACK INN appearing beneath the slogan. Plaintiff continued to distribute these buttons to its employees, customers and prospective customers nationwide and as part of its advertising program.

"13. On or about January 18, 1967, defendant filed an application in the United States Patent Office, Serial No.

262,808 seeking registration of the service mark WE SMILE MORE for hotel and inn services, claiming to have first used the slogan in connection with hotel and inn services on June 16, 1966, and in interstate commerce on July 22, 1966. The United States service mark examiner found the slogan to be a mark proper for registration and approved defendant's application.

"14. On January 11, 1968, Thomas F. Hetherington, Vice President and Senior House Counsel of defendant sent a letter to plaintiffs to immediately discontinue displaying the lapel buttons and using the words WE SMILE MORE in connection with the hotel business. This letter was received in the usual course of business, by plaintiff and plaintiff responded thereto on February 9, 1968.

"15. On March 18, 1968, plaintiff filed a Notice of Opposition in the United States Patent Office contesting issuance of a registration to defendant for the service mark WE SMILE MORE as sought in Serial No. 262,808 filed January 18, 1967. Opposition proceeding No. 48,345 was subsequently instituted by the Patent Office on April 9, 1968. The proceeding has been suspended pending the final determination of this action."

The trial court concluded that the slogan "we smile more" was a valid service mark, and further that defendant's use of these words was confusingly similar to that of plaintiffs' and was likely to result in confusion, mistake or deception in the minds of the public as to the source or origin of the defendant's service and therefore the use of the words belonged to Camelback Inn, a Delaware corporation.

■ In the absence of a "clearly erroneous showing", we must accept the findings of fact of the trial court as true, L. M. White Contracting Co. v. Tucson Rock and Sand Co., 11 Ariz.App. 540, 466 P.2d 413 (1970); however, we are not similarly bound by its conclusions of law. In re Estate of Daley, 6 Ariz.App. 443, 433 P.2d 296 (1967).

■ Plaintiffs argue that the slogan "we smile more" is a valid service mark in accordance with the definition in the United States Code, which provides:

"The term 'service mark' means a mark used in the sale or advertising of services to identify the services of one person and distinguish them from the services of others . . ." 15 U.S.C. § 1127 (1946).

Plaintiffs concede that while the Arizona statutes do not define the term "service mark" that the definition of "trademark", being A.R.S. § 44–1441, subsec. 4 (1959) is substantially identical:

" 'Trademark' means any word, name, symbol, or device or any combination thereof adopted and used by a person to identify goods made or sold by him and to distinguish them from goods made or sold by others."

Plaintiffs conclude therefrom that the defendant's record before the United States Patent Office, i. e., the administrative finding by that office that the slogan in question was registerable as a service mark, affords this court a substantial basis upon which to conclude, as a matter of law, that the slogan is a valid service mark for hotel services. We do not agree. While it is true that administrative approval of registration by the patent office is entitled to some weight in the courts, it can hardly be argued to be a "substantial basis" for a determination of the issue herein involved.

■ Was defendant's use of these words confusingly similar to that of plaintiffs'? We believe not. Both plaintiffs and defendant cite as authority for their positions the case of Boice v. Stevenson, 66 Ariz. 308, 187 P.2d 648 (1947). In that case, plaintiffs were operating under the name "Motor Supply Company" in Phoenix and eventually operated a branch store in Nogales under the same name. Defendants operated a store in Nogales under the name "Motor Supply of Nogales". The trial court found that defendants' sign was confusingly similar to plaintiffs' trade

name and enjoined the use of "Motor Supply of Nogales". The Supreme Court affirmed the trial court but amended the judgment insofar as it enjoined defendants from adopting any trade name including the words "Motor Supply" saying:

> " 'By prior adoption and use one does not acquire the exclusive right to use as a trade-name words properly descriptive of the business in which he is engaged; but if another, engaged in a like business, subsequently makes use of such descriptive words in his trade-name, he must *use them in such combination that the two trade-names will be fairly distinguishable.*'
>
> \* \* \* \* \* \*
>
> "Plaintiffs are not entitled to have these common words withdrawn from the English language and dedicated to their sole use unless it can be shown that even with a different arrangement of the words, styling and lettering, it will be impossible to remove unfair competition by their use." Id. at 319, 187 P.2d at 655.

In the earlier case of Lininger v. Desert Lodge, 63 Ariz. 239, 160 P.2d 761 (1945), plaintiff who was doing business under the name and style of "The Lodge on the Desert" attempted to enjoin defendant from using the name "Desert Lodge", the court denied injunctive relief and stated:

> "While recent development of the law of unfair competition, due undoubtedly to the wholly proper conviction on the part of courts and lawyers that the law must keep pace with changing business methods and changing standards of commercial morality, has resulted in marked expansion of the field involving protection of interests in trade-marks and trade-names, it must be noted that the field is not limitless. *It is not every appropriation of a trade-name by a second user that will evoke the protection of the courts.* Under any of the authorities which may be found in this country at this time, the interest in a trade-name is protected with reference only to (a)

competing goods, services or businesses, and (b) other goods, services or businesses which, in view of the designation used by the second user, are *likely to be regarded by prospective customers as associated with the first user.*
Restatement, Torts, Vol. 3, § 730, p. 596; Annot. 148 A.L.R. 12 et seq." Id. at 246, 160 P.2d at 763–764. (Emphasis added)

 We fail to see that the words "we smile more" are of such uniqueness so as to permit either plaintiffs or defendant to have their exclusive use. The record is devoid of any evidence that the phrase "we smile more" as used by Ramada confused the general public into believing that it denoted Camelback Inn. We concur with defendant's statement that no one can have the exclusive right to the use of these three words because they are common, ordinary, descriptive words and do not apply to any particular person or organization.

The judgment of the trial court is reversed with directions to enter a judgment denying the relief requested.

STEVENS, P. J., and DONOFRIO, J., concur.