THIS ORDER IS A
PRECEDENT OF THE
TTAB

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA  22313-1451**
General Contact Number: 571-272-8500
General Email: TTABInfo@uspto.gov

Lembree

June 6, 2024

Opposition Nos.     91283412 (**parent**)
                    91283416

*Mountain Gateway Order, Inc.*

*v.*

*Virginia Community College System*

**By the Trademark Trial and Appeal Board:**

These proceedings come before the Board on Applicant's motions to dismiss, filed on March 27, 2023 in both proceedings,[1] for lack of subject-matter jurisdiction and failure to state a claim upon which relief may be granted pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. The motions are fully briefed.

---

[1] The respective motions each appear at 4 TTABVUE in their respective proceeding files, and citations herein to briefs and pleadings refer to both proceedings. Citations to the record or briefs in this order are to the publicly available documents in the Board's online docketing system, TTABVUE. The number preceding TTABVUE corresponds to the docket entry number; the number(s) following TTABVUE refer(s) to the page number(s) of that particular docket entry, if applicable. The Board expects the parties to cite to the record using TTABVUE, particularly when referring to the evidentiary record in final briefs. *See* TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) § 801.03 (2023); *Made in Nature, LLC v. Pharmavite LLC*, 2022 USPQ2d 557, at *6 (TTAB 2022).

## I.  Consolidation

The Board may sua sponte consolidate proceedings involving common questions of law or fact to avoid duplicative or piecemeal discovery and prosecution in separate but substantively similar proceedings. *See* Fed. R. Civ. P. 42(a); *see also One Jeanswear Grp. Inc. v. YogaGlo, Inc.*, 127 USPQ2d 1793, 1795 (TTAB 2018); *Wise F&I, LLC v. Allstate Ins. Co.,* 120 USPQ2d 1103, 1105 (TTAB 2016). Inasmuch as the parties and opposed mark in both cases are identical and the grounds for opposition are similar, Opposition Nos. 91283412 and 91283416 are hereby consolidated. *See Wise F&I, LLC*, 120 USPQ2d at 1105 (sua sponte consolidation).

The record will be maintained in Opposition No. 91283412 as the "parent" case. From this point on, with the exception of the pleadings,[2] a single copy of all submissions should be filed in the parent case only under a caption listing both proceeding numbers, identifying the parent case first.

Despite being consolidated, each proceeding retains its separate character and requires entry of a separate judgment. The decision on the consolidated cases will take into account any differences in the issues raised by the respective pleadings; a copy of the decision will be placed in each proceeding file. *One Jeanswear Grp.*, 127 USPQ2d at 1795.[3]

---

[2] Inasmuch as the answer has not been filed in either proceeding, Applicant should file an answer in each opposition proceeding, respectively, before commencing the filing of a single copy of all submissions in the parent case.

[3] The parties should promptly inform the assigned interlocutory attorney of any other proceedings or related cases within the meaning of Fed. R. Civ. P. 42, so the Board may consider further consolidation.

## II.     Background

Opposer pleads common law rights in, and ownership of pending applications to register, the marks MOUNTAIN GATEWAY and MOUNTAIN GATEWAY ACADEMY, and opposes registration of the standard character mark MOUNTAIN GATEWAY COMMUNITY COLLEGE in the two involved applications[4] on the grounds of likelihood of confusion, dilution by blurring, and lack of a bona fide intent to use.[5]

In lieu of answering, Applicant filed its timely motions. Applicant argues in both that subject-matter jurisdiction is lacking as a result of state sovereign immunity, and that the notices of opposition fail to state a claim upon which relief may be granted.

---

[4] By way of an application filed on September 7, 2021, under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b) (Serial No. 97014470), Applicant seeks registration on the Principal Register of the standard character mark MOUNTAIN GATEWAY COMMUNITY COLLEGE for "Sweatshirts; T-shirts; Caps being headwear" in International Class 25 and "Educational services, namely, providing courses of instruction at the college level and distribution of course material in connection therewith" in International Class 41. By way of division on December 7, 2022, Class 25 remained with the parent application, which is now subject to opposition in Opposition No. 91283416, and Class 41 became child application Serial No. 97975240, amended to filing basis under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), which is now subject to opposition in Opposition No. 91283412.

[5] Opposer's pleaded applications are Serial Nos. 97723834, 97723261, 97723814 (Registration No. 7395759), 97723827 (Registration No. 7276352), 97723761 (Registration No. 7276340), 97723850 (Registration No. 7276355), 97723843 (Registration No. 7276354), and 97723793. As noted, certain pleaded applications have issued as registrations during this proceeding. *UMG Recordings, Inc. v. O'Rourke*, 92 USPQ2d 1042, 1045 n.12 (TTAB 2009) (if a party pleads a pending application in the notice of opposition, it may make the resulting registration of record at trial without having to amend its pleading to assert reliance on the registration).

### III.  Motion to Dismiss for Lack of Subject-Matter Jurisdiction

A party may assert the defense of lack of subject-matter jurisdiction by way of a motion to dismiss. Fed. R. Civ. P. 12(b)(1). Motions to dismiss on jurisdictional grounds are usually considered before other motions because without jurisdiction, other matters may not be considered. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).

### A. Parties' Arguments

Applicant asserts that it "is an agency of the Commonwealth of Virginia" and argues that the Board therefore lacks subject-matter jurisdiction because "[i]nter part[es] proceedings before the Board are exactly the sort of adjudications to which sovereign immunity applies" to accord States the dignity that is consistent with their status as sovereign entities. In doing so, Applicant relies on similarities between district court and Board proceedings. 4 TTABVUE 9 (citing *Fed. Maritime Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760, 63 USPQ2d 1321 (2002) ("*FMC*"), and TBMP § 502.01 ("highlighting some differences in district court proceedings but acknowledging similarities")).

Opposer responds that, in Board proceedings, the federal government is exercising "superior sovereignty," and that, consequently, States may not assert their sovereign immunity therein. 7 TTABVUE 5 (citing, inter alia, *FMC*, 535 U.S. at 752, 767-68; *Alden v. Maine*, 527 U.S. 706, 755 (1999)). Opposer further asserts that "the basic function of an inter partes opposition proceeding before the [Board] is for a private third party to assist the [US]PTO with examining the legitimacy of an agency-granted

public right to a trademark registration." *Id*. at 8. Additionally, Opposer states that it is the "'right [and] duty of the [USPTO] to determine, ex parte, and irrespective of the contentions of the parties the registrability of [each mark]." *Id*. at 9 (citing *Minn. Mining & Mfg. Co. v. Minn. Linseed Oil Paint Co.*, 229 F.2d 448, 108 USPQ 314, 321 (CCPA 1956)). Opposer asserts that "the proceeding exists for the principal purpose of maintaining the integrity of registered trademarks by avoiding confusion from the applicant's use of the mark." *Id*. at 9. Further, Opposer states that "'Congress felt that it is necessary to provide a backstop to purely ex parte examination' and therefore created the 'backstops' of opposition and cancellation proceedings 'as the best method devised to protect rights' – in this instance, the right of the public not to be confused." *Id*. (citing 3 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION §§ 20:2 and 20:40 (5th ed.) (March 2024 Update); and *In re Viterra, Inc.*, 671 F.3d 1358, 101 USPQ2d 1905, 1910 (Fed. Cir. 2012)).

Opposer argues that state sovereign immunity is inapplicable to opposition proceedings because Board proceedings are sufficiently akin to those at the Patent Trial and Appeal Board (PTAB), for which tribal and state sovereign immunity were held, respectively, not to prohibit inter-partes review (IPR) proceedings based on a material difference between federal court actions and IPRs. 7 TTABVUE at 5-9 (citing *Saint Regis Mohawk Tribe v. Mylan Pharm. Inc.,* 896 F.3d 1322, 127 USPQ2d 1281 (Fed. Cir. 2018); *Regents of Univ. of Minn. v. LSI Corp.*, 926 F.3d 1327, 2019 USPQ2d 219331 (Fed. Cir. 2019) ("*LSI*"); and Trademark Act § 18, 15 U.S.C. § 1068) ("The authority of the Director [to order remedies available in inter partes proceedings as

the rights of the parties may be established in the proceedings] includes the authority to reconsider, and modify or set aside, a decision of the [Board] . . .")).

In its reply brief, Applicant counters that the process applied in IPR proceedings and the use of IPR by "the United States in its role as a superior sovereign to reconsider a prior administrative grant and protect the public interest" are distinguishable from Board inter partes proceedings. 8 TTABVUE 2-5. Applicant asserts that "the Director's retention of authority over this proceeding, which is more similar to a court maintaining control over its dockets, does not convert an action by a private party before the [Board] into an agency-initiated enforcement proceeding, like in an IPR." *Id*. at 4-5. More particularly, Applicant argues that Board inter partes proceedings are unlike IPR because: 1) the Director institutes IPR proceedings, but private parties commence Board inter partes proceedings; 2) IPR proceedings may continue to a final decision even if an aggrieved party declines to participate; and 3) unlike Board inter partes proceedings, the Federal Rules of Civil Procedure do not apply to IPR proceedings. *Id*. at 5.

Responding specifically to Opposer's assertions that Board inter partes proceedings serve as a backstop to the USPTO's obligation to consider, ex parte, rights to registration of trademarks, Applicant counters that, even if so, Opposer's argument is inapposite because it does not alter the adversarial nature of opposition proceedings. *Id*. at 6-7 n.1 (adding that Opposer's citation to *Minn. Mining* is "misplaced" inasmuch as the decision predates establishment of the Board).

**B. Analysis**

State educational entities have appeared before the Board on several occasions in the position of plaintiff and defendant. *See e.g.*, *Bd. of Regents, Univ. of Tex. Sys. v. S. Ill. Miners, LLC*, 110 USPQ2d 1182 (TTAB 2014) (counterclaim brought to restrict plaintiff's registrations denied on the merits); *Tex. A&M Univ. v. Wash. Soap Co.*, Opp. No. 91223136, 2018 WL 3412616 (TTAB 2018) (nonprecedential) (state educational entity's opposition sustained on the merits); *Bd. of Trs. of Univ. of Ala. v. Pitts*, 107 USPQ2d 2001 (TTAB 2013) (state educational entity's opposition dismissed on the merits), *vacated on other grounds pursuant to agreement of the parties sub nom. Bd. of Trs. of the Univ. of Ala. v. Houndstooth Mafia Enters LLC*, 163 F. Supp. 3d 1150 (N.D. Ala. 2016); *Retail Royalty Co. v. Univ. of Houston Sys.*, Opp. No. 91217413, 2017 WL 1345070 (TTAB 2017) (nonprecedential) (opposition brought against state educational entity sustained in part on the merits); *Regents of Univ. of Cal. v. Hodgell*, Opp. No. 91107009, 2000 WL 158734 (TTAB 2000) (nonprecedential) (state educational entity's opposition sustained on the merits).

Opposer does not dispute that Applicant is a state agency. 7 TTABVUE 4-10. Thus, we turn to the legal question: whether Applicant enjoys sovereign immunity. *Cf.* Trademark Rule 2.127(a).

In certain circumstances, state sovereign immunity may be asserted when "a private party [] haul[s] a State in front of . . . an administrative tribunal" within a federal agency in an adversarial proceeding bearing strong similarities to civil litigation. *FMC*, 535 U.S. at 760 n.11. However, States may not assert sovereign

immunity where a federal agency exercises its superior sovereignty in agency enforcement actions instituted upon information supplied by a private party to ensure State compliance with federal law, even if some aspects of civil litigation procedure are applied. *LSI*, 2019 USPQ2d 219331, at \*10 (citing *FMC*, 535 U.S. at 768) (inter partes review before the Patent Trial and Appeal Board has been held to be "similar to an agency enforcement action instituted by the USPTO 'upon information supplied by a private party' rather than civil litigation, so state sovereign immunity is not implicated").

Applicant here seeks federal trademark registrations. Registration proceedings are governed by federal law with certificates of registration issued "in the name of the United States of America, under the seal of the [USPTO], and . . . signed by the Director." Trademark Act § 7(a), 15 U.S.C. § 1057(a).

Applications to the USPTO are first subject to refusal by a USPTO examiner, following which applications are subject to refusal by way of an opposition proceeding.[6] With its definition of "person," Section 45 of the Trademark Act expressly contemplates that States may avail themselves of the Trademark Act's registration (and opposition) provisions because it defines "person" as including "any State [and] any instrumentality of a State," such that "any State [] and any such instrumentality . . . shall be subject to the provisions of this chapter in the same manner and to the same extent as any nongovernmental entity." Trademark Act § 45,

---

[6] Notice of these proceedings is by the USPTO Director, who also directs the Board to determine and decide the respective rights of registration. Trademark Act § 17(a), 15 U.S.C. 1067(a).

15 U.S.C. § 1127. Congress has plainly stated that "person[s]" may file applications for registration of marks.[7] The Trademark Act expressly requires submission to opposition proceedings by such persons. *See* Trademark Act § 13(b), 15 U.S.C. § 1063(b) ("Unless registration is successfully opposed – a mark . . . shall be registered . . ."). If an application is opposed, the "applicant in an opposition proceeding . . . shall be in the position of defendant," Trademark Rule 2.116(b), 37 C.F.R. § 2.116(b),[8] and the Board, for the Director, serves the notice of opposition upon the applicant of record, Trademark Rule 2.105(a), 37 C.F.R. § 2.105(a); *see also* TBMP § 310.01. Thus, the Trademark Act is clear that States may apply for trademarks and that States that apply are subject to the same registration provisions of the Trademark Act as any other applicant, including that a State's application is subject to opposition proceedings. *See* Trademark Act §§ 1 and 45; *see also* Trademark Rule 2.116(b).

"[T]he issue in an opposition is the applicant's right to register and not opposer's right to exclusive use." *In re Marriott Corp.*, 517 F.2d 1364, 186 USPQ 218, 221 (CCPA 1975). Opposers are restricted to statutory grounds which negate the applicant's entitlement to registration. *Young v. AGB Corp.*, 152 F.3d 1377, 47 USPQ2d 1752, 1755 (Fed. Cir. 1998) (dismissing opposition asserting that exclusivity

---

[7] Trademark Act § 1(a)(3)(A) ("[T]he person making the verification [on an application filed under Trademark Act Section 1(a)] believes that . . . the juristic person in whose behalf he or she makes the verification, to be the owner of the mark sought to be registered."); Trademark Act § 1(b)(1) ("A person who has a bona fide intention . . . to use a trademark in commerce may request registration of its trademark . . ."); *see also* Trademark Act § 45, 15 U.S.C. § 1127 (the term "person" and other words are used "to designate the applicant").

[8] *Accord* Trademark Act § 13 ("The Director shall notify the applicant of each extension of time for filing opposition.").

of trademark registration would impede plaintiff's sales). It is recognized that Board opposition proceedings enable the Office to more fully accomplish the means of enforcing the trademark regulatory scheme. 6 MCCARTHY, supra at 6, § 32:103 ("The whole point of having opposition and cancellation challenges is to provide a backstop to purely ex parte U.S.P.T.O. examination of trademark applications."). Indeed, certain obstacles to registration, such as dilution—a pleaded ground for opposition here—are only suitable to determination by the USPTO in an inter partes setting. *See* Trademark Act § 2(f), 15 U.S.C. § 1052(f) ("A mark which would be likely to cause dilution by blurring or dilution by tarnishment under [Section § 43(c), 15 U.S.C. § 1125(c), of the Trademark Act] may be refused registration only pursuant to an [opposition] proceeding."); *see also* TRADEMARK MANUAL OF EXAMINING PROCEDURE (TMEP) § 1201.02(b) (May 2024) (the examining attorney will not inquire into the bona fides, or good faith, of an applicant's asserted intention to use a mark in commerce during ex parte examination, unless there is evidence in the record clearly indicating that the applicant does not have a bona fide intention to use the mark in commerce.).[9]

The parties present contrasting views of opposition proceedings. Applicant asserts they are highly similar to civil litigation, while Opposer characterizes them as federal administrative proceedings triggered by a private citizen so that the USPTO may

---

[9] Likewise, although the Trademark Act permits concurrent registrations—geographically restricted registrations permitted under Trademark Act § 2(d)—the means by which the USPTO employs the statutory right is by way of an inter partes proceeding, namely, a concurrent use proceeding before the Board. Trademark Act § 17(a); *see also In re Home Fed. Sav. & Loan Ass'n,* 213 USPQ 68, 69 (TTAB 1982); TBMP § 1102.02.

ensure compliance with federal law (and as similar to IPR proceedings in particular, relying on the *LSI* court's determination that state sovereign immunity does not apply to IPR proceedings). While opposition proceedings may have some procedural attributes different from IPR proceedings, their salutary purpose is comparable. Oppositions protect the public interest in the integrity of the federal trademark register by providing a means to consider and decide the right to registration, a matter of public interest. Traditional civil action-type remedies are unavailable in opposition proceedings. *Gen. Mills Inc. v. Fage Dairy Processing Indus. SA*, 100 USPQ2d 1584, 1591 (TTAB 2011).[10]

The public interest function of opposition proceedings is illustrated by both practice and procedure. For example, to safeguard the public, in opposition proceedings the equitable defenses of laches and acquiescence are not available against claims of genericness, descriptiveness, fraud, abandonment, or functionality. *Saint Gobain Abrasives Inc. v. Unova Indus. Automation Sys., Inc.*, 66 USPQ2d 1355, 1359 (TTAB 2003). "The oft-stated rationale for this principle is 'that it is within the

---

[10] As noted previously, "the issue in an opposition is the applicant's right to register and not opposer's right to exclusive use." *In re Marriott*, 186 USPQ at 221. The same is true for cancellation proceedings brought within five years of the registration date. *See Kellogg Co. v. Pack'Em Enters. Inc.*, 14 USPQ2d 1545, 1548-49 (a registration which is less than five years old may be cancelled on any ground which would have barred registration), *aff'd*, 951 F.2d 330 (Fed. Cir. 1991). The Trademark Act provides significant contrast between trademark litigation in courts and administrative proceedings before the Board: federal courts have original jurisdiction over trademark infringement matters, *see* 15 U.S.C. § 1121(a), and the Trademark Trial and Appeal Board has jurisdiction over registration matters, *see* Trademark Act § 17, 15 U.S.C. § 1067 (The Board "determine[s] and decide[s] the respective rights of registration."); federal courts may award remedies of damages, costs, and injunctive relief in trademark litigation, *see* Trademark Act §§ 34, 35, 15 U.S.C. §§ 1116, 1117, whereas the Board has no authority to award damages, costs, or injunctive relief, *see Gen. Mills*, 100 USPQ2d at 1591.

public interest to have registrations which are void ab initio stricken from the register and that this interest or concern cannot be waived by the inaction of any single person or concern no matter how long the delay persists.'"[11] *Id*. (quoting *W.D. Byron & Sons, Inc. v. Stein Bros. Mfg. Co.*, 146 USPQ 313, 316 (TTAB 1965), *aff'd,* 377 F.2d 1001, 153 USPQ 749 (CCPA 1967)). In addition, opposition proceedings involve solely an applicant's right to register as demonstrated by the limitation of available claims and defenses to a resolution of the question of registrability. If state entities such as Applicant were not subject to opposition proceedings, the USPTO would be precluded from exercising "ample means of ensuring that [States] comply with the [Trademark] Act and other valid federal rules governing [trademark registrability]." *See FMC*, 535 U.S. at 768.

Applicant chose to apply for federal trademark registrations that would evidence its presumed nationwide exclusive rights to use marks in commerce, 15 U.S.C. § 1057(b), a choice with consequences for the public.[12] Applicant's status as a juristic person under the Trademark Act,[13] and the public interest in the integrity of the

---

[11] In cancellation proceedings, actions which may be brought after five years of the registration date also implicate matters of public interest. *Compare* Trademark Act § 14(3) *with Saint Gobain Abrasives*, 66 USPQ2d at 1359.

[12] Federal registration confers on Applicant the right to "prevent[] others from using the mark," *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 142, 113 USPQ2d 2045 (2015), and "certain benefits useful in infringement litigation," *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 146, 2023 USPQ2d 677 (2023).

[13] As noted previously in this section of the Board's order, States, and instrumentalities of a State, are specifically included in the registration system by virtue of Trademark Act Section 45.

trademark registration system, dictate that Applicant is subject to opposition proceedings and that sovereign immunity does not apply to opposition proceedings.

Applicant's motions to dismiss for lack of subject-matter jurisdiction on the basis of state sovereign immunity are **denied**.[14]

## IV. Motion to Dismiss for Failure to State a Claim Upon Which Relief May be Granted[15]

### A. Standard on Motion to Dismiss

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted is a test solely of the legal sufficiency of the allegations in a complaint. *Thrive Natural Care Inc. v. Nature's Sunshine Prods., Inc.*, 2023 USPQ2d 953, *1 (TTAB 2023) (citations omitted); TBMP § 503.02.

To state a claim upon which relief can be granted, and thus survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), Opposer need only allege facts which, if proved, would establish that 1) it has entitlement to a statutory cause of action under Trademark Act Section 13, 15 U.S.C. § 1063, and 2) a valid statutory ground exists for opposing registration of the applied-for mark. *See Thrive Natural Care Inc.,* 2023

---

[14] In view of our determination that state sovereign immunity does not affect jurisdiction in these proceedings, we do not address Applicant's assertion that abrogation of state sovereign immunity by Congress is foreclosed, *see* 4 TTABVUE 9-10 (citing decisional law interpreting statutory provisions not implicated in applying for registration (or Board proceedings)) or Opposer's assertion that the proceedings are in rem and do not implicate sovereign immunity, *see* 7 TTABVUE 10 n.1.

[15] To the extent Applicant moves to dismiss for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure based on its allegations of sovereign immunity, *see* 4 TTABVUE 11, in view of the Board's determination that sovereign immunity is inapplicable, Applicant's motion is **denied**.

USPQ2d 953, at *1-2 (citing, inter alia, *Fair Indigo LLC v. Style Conscience*, 85 USPQ2d 1536, 1538 (TTAB 2007)).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See Twombly*, 550 U.S. at 556-57. However, the plausibility standard does not require that a plaintiff set forth detailed factual allegations. *Id.* Rather, a plaintiff need only allege "enough factual matter … to suggest that [a claim is plausible]" and "raise a right to relief above the speculative level." *Totes-Isotoner Corp. v. U.S.*, 594 F.3d 1346, 1354 (Fed. Cir. 2010). Moreover, it is well established that whether a plaintiff can actually prove its allegations is not a matter to be determined upon motion to dismiss, but rather at final hearing or upon summary judgment, after the parties have had an opportunity to submit evidence. *See Libertyville Saddle Shop Inc. v. E. Jeffries & Sons, Ltd.*, 22 USPQ2d 1594, 1597 (TTAB 1992) ("A motion to dismiss does not involve a determination of the merits of the case ….").

## B. Entitlement to a Statutory Cause of Action

Every plaintiff in an inter partes proceeding must plead and ultimately prove its entitlement to a statutory cause of action. *See Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298, 2020 USPQ2d 11277, at *5 (Fed. Cir. 2020); *Austl. Therapeutic Supplies Pty.*

*Ltd. v. Naked TM, LLC*, 965 F.3d 1370, 2020 USPQ2d 10837, at *3 (Fed. Cir. 2020) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 109 USPQ2d 2061, 2067 n.4 (2014)). To establish entitlement, a plaintiff must demonstrate 1) an interest falling within the zone of interests protected by the statute and 2) a reasonable belief in damage proximately caused by the registration or continued registration of the mark. *See Corcamore*, 2020 USPQ2d 11277, at *4; *Spanishtown Enters., Inc. v. Transcend Resources, Inc.*, 2020 USPQ2d 11388, at *1 (TTAB 2020).

Opposer has sufficiently pleaded statutory entitlement by alleging ownership of common law rights in, and several applications to register, its MOUNTAIN GATEWAY marks. *See* 1 TTABVUE 6-9, ¶¶ 1-4. *See Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842, 1844 (Fed. Cir. 2000) (A claim of likelihood of confusion that is not wholly without merit is one manner in which a plaintiff may sufficiently allege entitlement at the pleading stage.); *see also Toufigh v. Persona Parfum Inc.*, 95 USPQ2d 1872, 1874 (TTAB 2010) (entitlement established by introducing evidence of pleaded application for "at least arguably related" goods); *Giersch v. Scripps Networks Inc.*, 90 USPQ2d 1020, 1022 (TTAB 2009) (entitlement established by introducing evidence of common-law use of petitioner's mark).

### C. Likelihood of Confusion

In order to adequately plead likelihood of confusion, Opposer need only allege it has priority of use and that the Applicant's mark so resembles Opposer's mark as to be likely to cause confusion. *See* Trademark Act § 2(d), 15 U.S.C. § 1052(d); *Otto Roth*

*& Co. v. Universal Foods Corp.*, 640 F.2d 1317, 209 USPQ 40, 43 (CCPA 1981). To plead a sufficient claim under Section 2(d) of the Trademark Act, only a general allegation of likelihood of confusion is required. *See Wet Seal, Inc. v. FD Mgmt., Inc.*, 82 USPQ2d 1629, 1639 n.21 (TTAB 2007) ("Opposer is not required to specifically plead every factual component of a likelihood of confusion claim."). To plead priority based on an unregistered mark, the notice of opposition must be sufficiently definite to provide adequate notice to the applicant. *See Standard Knitting, Ltd. v. Toyota Jidosha Kabushiki Kaisha*, 77 USPQ2d 1917, 1919, n.18 (TTAB 2006) (opposer may not rely on unpleaded marks or registrations).

Opposer has sufficiently pled likelihood of confusion based on its alleged use of its MOUNTAIN GATEWAY marks prior to September 7, 2021, the filing date of the involved applications, and the asserted likelihood of confusion. *See* 1 TTABVUE 9-10, ¶¶ 9-12.

### D. Dilution

Stating a claim for dilution under Section 43(c) of the Act, 15 U.S.C. § 1125(c) requires allegations that: 1) opposer's mark is a famous mark that is distinctive; 2) opposer's mark became famous prior to the filing date (i.e., the date of constructive use) of the applicant's intent-to-use application;[16] and 3) use of applicant's mark is likely to cause dilution of opposer's pleaded mark by blurring or tarnishment. *See Coach Servs. Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 101 USPQ2d 1713, 1723-

---

[16] As previously noted, *see* n. 4, supra, Applicant filed, on September 7, 2021, its intent-to-use application, which was later divided.

24 (Fed. Cir. 2012); *see also In re Omega SA,* 118 USPQ2d 1289, 1292, n.10 (TTAB 2016) (citing *Toro Co. v. Torohead Inc.,* 61 USPQ2d 1164, 1174 (TTAB 2001)) (Where an intent-to-use application is the subject of an opposition, the opposer must plead that its mark became famous prior to the filing date (i.e., date of constructive use) of the opposed intent-to-use application.).

Opposer has sufficiently pled a claim of dilution by alleging that its MOUNTAIN GATEWAY mark is famous, became famous and distinctive prior to September 7, 2021, the filing date of Applicant's applications, and use of the mark in Applicant's involved applications is likely to dilute the distinctive quality of Opposer's MOUNTAIN GATEWAY mark. 1 TTABVUE 7-8, 11, ¶¶ 3-4, 17-18.

### E. Lack of Bona Fide Intent to Use

To sufficiently plead lack of bona fide intent to use, Opposer must allege that Applicant lacked a bona fide intent to use its mark in commerce on or in connection with the goods and services identified in the application as of the application filing date. *See Monster Energy Co. v. Tom & Martha LLC*, 2021 USPQ2d 1197, at *8 (TTAB 2021); *Boston Red Sox Baseball Club LP v. Sherman*, 88 USPQ2d 1581, 1587 (TTAB 2008) (citing *Commodore Elecs. Ltd. v. CBM K.K.*, 26 USPQ2d 1503, 1507 (TTAB 1993)).

Opposer has sufficiently pled lack of a bona fide intent to use by alleging that "at the time Applicant filed the Opposed Application, Applicant lacked the required bona fide intention to use Applicant's Mark in commerce." 1 TTABVUE 12, ¶ 21.

17

In view thereof, Applicant's motions to dismiss for failure to state a claim upon which relief may be granted are **denied**.

## V.     Summary; Schedule

Opposition Nos. 91283412 and 91283416 are **consolidated**. Applicant's motions to dismiss for lack of subject-matter jurisdiction in both proceedings are **denied**. Applicant's motions to dismiss for failure to state a claim in both proceedings are **denied**.

Proceedings are resumed. Dates are reset as follows:

| | |
|---|---|
| Time to Answer | **7/1/2024** |
| Deadline for Discovery Conference | **7/31/2024** |
| Discovery Opens | **7/31/2024** |
| Initial Disclosures Due | **8/30/2024** |
| Expert Disclosures Due | **12/28/2024** |
| Discovery Closes | **1/27/2025** |
| Plaintiff's Pretrial Disclosures Due | **3/13/2025** |
| Plaintiff's 30-day Trial Period Ends | **4/27/2025** |
| Defendant's Pretrial Disclosures Due | **5/12/2025** |
| Defendant's 30-day Trial Period Ends | **6/26/2025** |
| Plaintiff's Rebuttal Disclosures Due | **7/11/2025** |
| Plaintiff's 15-day Rebuttal Period Ends | **8/10/2025** |
| Plaintiff's Opening Brief Due | **10/9/2025** |
| Defendant's Brief Due | **11/8/2025** |
| Plaintiff's Reply Brief Due | **11/23/2025** |
| Request for Oral Hearing (optional) Due | **12/3/2025** |

**IMPORTANT TRIAL AND BRIEFING INSTRUCTIONS**

Generally, the Federal Rules of Evidence apply to Board trials. Trial testimony is taken and introduced out of the presence of the Board during the assigned testimony periods. The parties may stipulate to a wide variety of matters, and many requirements relevant to the trial phase of Board proceedings are set forth in Trademark Rules 2.121 through 2.125. These include pretrial disclosures, the

manner and timing of taking testimony, matters in evidence, and the procedures for submitting and serving testimony and other evidence, including affidavits, declarations, deposition transcripts and stipulated evidence. Trial briefs shall be submitted in accordance with Trademark Rules 2.128(a) and (b). Such briefs should utilize citations to the TTABVUE record created during trial to facilitate the Board's review of the evidence at final hearing. *See* TBMP § 801.03. Oral argument at final hearing will be scheduled only upon the timely submission of a separate notice as allowed by Trademark Rule 2.129(a).

**TIPS FOR FILING EVIDENCE, TESTIMONY, OR LARGE DOCUMENTS**

The Board requires each submission to meet the following criteria before it will be considered: 1) pages must be legible and easily read on a computer screen; 2) page orientation should be determined by its ease of viewing relevant text or evidence, for example, there should be no sideways or upside-down pages; 3) pages must appear in their proper order; 4) depositions and exhibits must be clearly labeled and numbered – use separator pages between exhibits and clearly label each exhibit using sequential letters or numbers; and 5) the entire submission should be text-searchable. Additionally, submissions must be compliant with Trademark Rules 2.119 and 2.126. Submissions failing to meet all of the criteria above may require re-filing. **Note:** Parties are strongly encouraged to check the entire document before filing.[17] The Board will not extend or reset proceeding schedule dates or other deadlines to allow

---

[17] To facilitate accuracy, ESTTA provides previews of each page before submitting.

time to re-file documents. For more tips and helpful filing information, please visit

the [ESTTA help](#) webpage.